(No. 93573.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. BYRON WILLIAMS, Appellant.

*Opinion filed April 3, 2003.*

192

GARMAN, J., concurring in part and dissenting in part.
THOMAS, J., dissenting.

Daniel D. Yuhas, Deputy Defender, and John M. McCarthy, Assistant Defender, of the Office of the State Appellate Defender, of Springfield, for appellant.

James E. Ryan, Attorney General, of Springfield (Joel D. Bertocchi, Solicitor General, William L. Browers and Michael M. Glick, Assistant Attorneys General, of Chicago, and Stephen E. Norris and Trent M. Marshall, of the Office of the State's Attorneys Appellate Prosecutor, of Mt. Vernon, of counsel), for the People.

JUSTICE FITZGERALD delivered the opinion of the court:

Following a jury trial in the Madison County circuit court, the defendant, Byron Williams, was convicted on two counts of first degree murder (see 720 ILCS 5/9—1(a)(1) (West 1996)) and two counts of contributing to the criminal delinquency of a juvenile (see 720 ILCS 5/33D—1 (West 1996)). The defendant received concurrent sentences of life imprisonment for the murder convictions and 20 years' imprisonment for the contributing convictions. A divided appellate court panel affirmed the defendant's convictions and sentences. No. 5—99—0452 (unpublished order under Supreme Court Rule 23). We allowed his petition for leave to appeal. See 177 Ill. 2d R. 315(a). We now reverse and remand.

### BACKGROUND

On January 28, 1997, two East St. Louis teenagers, Terril Williams (Williams) and Terril Madison, telephoned an acquaintance, Alton teenager Tineisha Haynes, to confront her about causing problems between their

friends, Albert Greenlee and Demario Ursery. When Haynes refused to talk and hung up the telephone, Madison and Williams called her pager to harass her. Haynes then telephoned Williams, who initiated a three-way call with Madison, and an argument ensued. Madison threatened to kill Haynes and her cousin, Alton teenager Darryl Womack. Womack eventually took the telephone from Haynes and asked Madison and Williams to stop calling her. Madison repeated his threat; Williams then threatened Womack. Williams said that he had a gun, and Womack replied that he also had a gun. They then threatened each other with an escalating variety of weapons, including machine guns, bazookas, missiles, and tanks. The argument continued until Womack challenged Williams to come to his neighborhood. According to Madison, Williams said, "[Y]ou're gonna die," and hung up the telephone.

In the evening of January 30, 1997, Robert Brock, an acquaintance of the defendant, approached the defendant, Williams, and Madison outside the defendant's uncle's house. The group was quiet, watching people. Brock overheard Williams talk to the defendant about going to Alton and "taking care of business." According to Brock, the defendant told Williams "to shut his mouth up" before anyone realized what they intended to do. Williams continued to talk and patted his side where Brock observed a small caliber handgun with a "red bottom." According to Brock, the defendant again told Williams, "Stop running your mouth before everybody knows what's going on and stop telling people stuff before I take my gun." The defendant said he planned to find a ride to Alton. At some point, the group left.

Later that night, Felipe Luckey drove the defendant, Williams, Madison, and Greenlee from East St. Louis to Alton. According to Greenlee, Williams was wearing dark clothes, brown boots, and a red cap with a yellow "T."

On the way to Alton, Luckey stopped by the Sullivan housing projects, so that Madison and Williams could visit a woman. Madison and Williams went to the woman's apartment and learned that she was not home. According to Madison, when he and Williams returned to the car, the defendant passed a gun with red tape on it to Williams; Williams put the gun into his coat. Luckey also stopped at a gas station. According to gas station attendant Eldon Smith, between 8 and 8:30 p.m., the defendant bought a snack and asked for directions to Belle Manor, the apartment complex where Womack lived.

Around 9 p.m., Luckey and the others arrived at Belle Manor, where Williams saw Womack walking with James Patterson. Luckey passed them and parked further up the road on a hill. Williams, Madison, and Greenlee exited the car. While Greenlee stood between two nearby apartment buildings, Williams and Madison approached Womack and Patterson. Words were exchanged, and Williams pulled the gun from his coat. When Patterson stepped forward, Williams shot him. When Womack turned to run, Williams shot him in the back. Three Belle Manor residents who witnessed the shootings later described the shooter as wearing a dark jacket and a red cap.

After the shooting, Williams and Madison ran back to the car. Greenlee, frozen in fear, urinated in his pants. Williams yelled at Greenlee to get into the car and threatened to shoot him. Greenlee returned to the car, and Luckey quickly drove away. According to Madison, the defendant asked Williams if "he took care of that," and Williams said yes. Everyone joked about Greenlee's wet pants, and the defendant told Greenlee that he would be hurt if he talked about the shootings. According to Madison, the defendant suggested that Madison and Williams go back to Alton to ensure no one saw the shootings. Madison drove Williams to Alton. According to

Madison, Williams telephoned Haynes around 11 p.m. and said, "You know your cousin's dead. Bitch, if you call the police or talk to the police, you're going to die." In the background, Madison added, "Yeah, bitch you're going to die." That night, Ursery talked to Madison and asked what Madison had done earlier. Madison responded that he was riding around in a car with Luckey, Williams, and the defendant.

The police investigation eventually led to the defendant. On March 13, 1997, he was indicted on one count of contributing to the criminal delinquency of a juvenile in connection with Patterson's murder and arrested. On August 11, 1997, 152 days after he was arrested, the defendant filed a motion to dismiss under the speedy-trial provisions of the Code of Criminal Procedure of 1963 (speedy-trial act) (725 ILCS 5/103—5(a) (West 1998)). The trial court denied this motion, finding that several delays were attributable to the defendant and that only 99 days had run for speedy-trial purposes.

On August 27, 1997, the State filed an amended information, recharging the defendant with contributing to the criminal delinquency of a juvenile in connection with Patterson's murder, and charging him with three additional offenses: one count of contributing to the criminal delinquency of a minor in connection with Womack's murder, one count of first degree murder pertaining to Womack, and one count of first degree murder pertaining to Patterson. On September 3, 1997, the defendant filed a motion to dismiss the Patterson murder charge under the speedy-trial act, alleging that 168 days had passed since he was arrested on the contributing charge in connection with Patterson's murder. The trial court denied this motion.

At trial, the State's case rested primarily on testimony from Greenlee and Madison. The defendant's case rested on testimony from several alibi witnesses, who stated

that they saw the defendant at an East St. Louis bar playing pool on the night of the shootings and that he did not go to Alton. The defendant then testified on his own behalf. He stated that he never gave Williams a gun and that he never went to Alton to shoot someone. The defendant testified, consistently with his alibi witnesses, that he went to a bar and played pool on the night of the shootings.

The jury found the defendant guilty on two counts of first degree murder and two counts of contributing to the criminal delinquency of a juvenile. The trial court sentenced him to concurrent sentences of life imprisonment on the murder convictions and 20 years' imprisonment on the contributing convictions. A divided appellate court panel affirmed the defendant's convictions and sentences. No. 5—99—0452 (unpublished order under Supreme Court Rule 23). We granted the defendant's petition for leave to appeal. See 177 Ill. 2d R. 315(a).

## ANALYSIS

The defendant raises three issues on appeal: (1) whether the State violated his statutory right to a speedy trial; (2) whether the trial court abused its discretion in allowing the State to impeach the defendant with facts not in evidence; and (3) whether the trial court abused its discretion in allowing the State to present evidence that its key witnesses received threats before testifying at trial.

### 1. Compulsory Joinder and the Speedy-Trial Act

First, the defendant contends that the State violated the speedy-trial act when it charged him with first degree murder in connection with Patterson's death 168 days after it charged him with contributing to the criminal delinquency of a juvenile in connection with Patterson's death. The defendant claims that, because these charges were subject to compulsory joinder, pretrial continuances

attributable to him on the contributing charge were not attributable to him on the murder charge.

The speedy-trial act provides, "Every person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he was taken into custody unless delay is occasioned by the defendant \*\*\*." 725 ILCS 5/103—5(a) (West 1996). Application of the speedy-trial act is a straightforward counting exercise when the defendant is charged with a single offense. Its application, however, becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times. In such cases the speedy-trial guarantee is tempered by compulsory joinder principles.

The compulsory-joinder provision of the Criminal Code of 1961 states:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are *based on the same act*.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." (Emphasis added.) 720 ILCS 5/3—3 (West 1996).

The committee comments shed some light upon what the phrase "based on the same act" means:

"Section 3—3 requires in substance that several offenses must be prosecuted in a single prosecution if they are based on the same *act*. (The Joint Committee originally used the word 'conduct' instead of 'act,' but after much discussion it was changed to 'act' before submission to the legislature.) This requirement is expressly subject, however, to several qualifications. First, the several charges must be known to

the prosecuting officer [citation] at the commencement of the prosecution. \*\*\* Second, the several charges must be within the jurisdiction of the same court—a necessary recognition of the statutory venue provisions. Third, as provided in subsection (c), after the prosecution has been initiated, the court may permit the separate trial of one or more of the offenses if the interests of justice so require. \*\*\*

\* \* \*

Section 3—3 is not intended to cover the situation in which several offenses—either repeated violations of the same statutory provision or violations of different provisions—arise from a series of acts which are closely related with respect to the offender's single purpose or plan." (Emphasis in original.) Ill. Ann. Stat., ch. 38, par. 3—3, Committee Comments—1961, at 101-02 (Smith-Hurd 1989).

That is, "same act" does not include independent acts constituting different offenses: "There is no requirement of joinder where multiple offenses arise from a series of related acts." *People v. Mueller*, 109 Ill. 2d 378, 385 (1985).

In *People v. Quigley*, 183 Ill. 2d 1 (1998), we discussed section 3—3 and its relation to the speedy-trial act. In *Quigley*, the defendant was charged by indictment with felony DUI and by information with misdemeanor DUI. Both charges arose from the same multiple-vehicle collision. The court dismissed the felony charge, and the defendant filed a speedy-trial demand on that charge. After he was reindicted for felony DUI, he filed a motion to dismiss the misdemeanor charge on speedy-trial grounds. The trial court agreed with the defendant and dismissed the misdemeanor charge. The defendant then filed a motion to dismiss the felony charge on compulsory-joinder and double-jeopardy grounds. The trial court disagreed with the defendant, and the defendant filed an interlocutory appeal. The appellate court affirmed.

We examined section 3—3 and noted that the parties'

dispute centered upon whether the two DUI charges were based on the "same act." *Quigley*, 183 Ill. 2d at 7. We held that they were and that the DUI charges were subject to compulsory joinder:

> "Driving while under the influence may lead to some other act that, in turn, leads to the accident. The underlying cause of both misdemeanor and [felony] DUI, however, is driving while under the influence. The misdemeanor DUI and the [felony] DUI charges are *based* on the same act. ***
>
> *** The 'same act' requirement applies primarily to two situations: (1) where several persons are affected by one act, and (2) where several different statutes are violated by one act. ***
>
> *** Defendant was allegedly engaged in only one continuous and uninterrupted act of driving while under the influence. In this instance, the phrase 'based on the same act' cannot be given a hypertechnical interpretation to create multiple acts based on discrete moments in time." (Emphasis in original.) *Quigley*, 183 Ill. 2d at 10-11.

We then addressed the interaction between compulsory-joinder principles and the speedy-trial guarantee:

> "Compulsory joinder requires the State to bring multiple charges in a single prosecution. The charges are tried together unless the circuit court determines that a separate trial is required in the interest of justice. [Citation.] Once a speedy-trial demand is filed, the multiple charges are subject to the same speedy-trial period. If the charges are required to be brought in a single prosecution, the speedy-trial period begins to run when the speedy-trial demand is filed, even if the State brings some of the charges at a later date." *Quigley*, 183 Ill. 2d at 13.

We concluded that the felony and misdemeanor charges were required to be tried together. *Quigley*, 183 Ill. 2d at 13-14. Once the speedy-trial period expired on the misdemeanor charge, it also ran on the felony charge. *Quigley*, 183 Ill. 2d at 16.

In this case, the defendant claims, and the State

concedes, that the murder and contributing charges related to Patterson were subject to compulsory joinder. In fact, responding to the defendant's second speedy-trial motion to dismiss, the prosecutor stated that the new charges were based upon

"the same fact pattern that the Grand Jury heard and in fact the Grand Jury considered the facts.

This is an alternative theory to the same facts. There is no change in discovery. There is no change in witnesses. There is no change in any evidence that would be presented. It's preliminarily an alternative theory which may—which a jury could find based upon the same facts which were presented ***."

The parties disagree, however, on whether continuances attributable to the defendant on the contributing charge were attributable to him on the murder charge.

In *People v. Williams*, 94 Ill. App. 3d 241 (1981), the appellate court addressed this issue. Though the court did not mention compulsory joinder or section 3—3, it held:

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. *Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.*" (Emphasis added.) *Williams*, 94 Ill. App. 3d at 248-49.

Until 1998, the appellate court uniformly followed the rule announced in *Williams*. See *People v. Stanley*, 266 Ill. App. 3d 307, 311 (1994); *People v. Hinkle*, 234 Ill. App. 3d 663, 666 (1992); *People v. Hawkins*, 212 Ill. App. 3d 973, 981 (1991); *People v. Howard*, 205 Ill. App. 3d 702, 710 (1990); see also *People v. Parker*, 59 Ill. App. 3d 302, 304-05 (1978); *People v. King*, 8 Ill. App. 3d 2, 5

(1972); *People v. Williams*, 2 Ill. App. 3d 993, 994-95 (1971); *People v. Alcazar*, 173 Ill. App. 3d 344, 354 (1988).

*People v. Gooden*, 296 Ill. App. 3d 205 (1998), *aff'd in part & rev'd in part*, 189 Ill. 2d 209 (2000), changed that. In *Gooden*, the State charged the defendant with home invasion. The State alleged that he entered his ex-wife's house without authority and struck her in the head with a shotgun. One hundred five days after his arrest, the defendant requested a 3½-month continuance to obtain a mental health expert. Two hundred eighteen days after his arrest, the State filed an amended information against the defendant, recharging him with home invasion and adding five counts of aggravated criminal sexual assault. In the new charges, the State alleged that the defendant sexually assaulted his ex-wife after he struck her in the head. The defendant filed a motion to dismiss the sexual assault charges under the speedy-trial act. The trial court denied the defendant's motion. Two hundred forty-three days after his arrest, but only 26 days after the State filed the new charges, the defendant was tried and convicted of home invasion and one count of sexual assault. The defendant appealed.

The appellate court affirmed, but its holding on the speedy-trial issue is difficult to discern. The court initially announced it had "no problem" with the proposition that, under section 3—3, "[i]f the newly charged offenses are known to the State at the time of the original prosecution and they arise from the same set of facts, then they are subject to the speedy-trial limits that apply to the original charge, regardless of when the new charges are filed." *Gooden*, 296 Ill. App. 3d at 210. The appellate court, however, did not explicitly apply this rule to the defendant. That is, the court did not conclude that the home invasion and sexual assault charges were not subject to compulsory joinder. Instead, the court considered whether the lengthy continuance requested by the

defendant on the home invasion charge also applied to the sexual assault charges. The appellate court stated:

> "[I]t is illogical to hold that continuances which are attributable to the original charges are not attributable to the later filed charges on the basis that those charges are not before the court. The defendant cannot have it both ways. He cannot seek continuances that benefit him and enable him to better prepare for trial on the charges and then seek the dismissal of a later-filed charge on the basis that 120 days had elapsed since he was brought into custody." *Gooden*, 296 Ill. App. 3d at 210.

The appellate court observed that the State waited to receive forensic test results to support the victim's allegations before filing the sexual assault charges: "This seems preferable to the State filing charges initially and having the defendant defend against charges that may be unfounded or have little supporting evidence." *Gooden*, 296 Ill. App. 3d at 210. According to the court, nothing in the record indicated that the State filed the new charges in an effort to deprive the defendant of his right to a speedy trial or to hinder his defense. *Gooden*, 296 Ill. App. 3d at 210. The defendant's trial was postponed because he sought mental health evidence on the home invasion charge, not because the State delayed in filing the sexual assault charges. *Gooden*, 296 Ill. App. 3d at 210. The court declined to follow *Williams* and it progeny, in effect holding that the continuance attributable to the defendant on the home invasion charge was also attributable to him on the sexual assault charges. *Gooden*, 296 Ill. App. 3d at 211.

We affirmed. Though we noted that compulsory-joinder principles are relevant to determining speedy-trial issues, we held that the so-called *Williams* rule should not extend to cases which do not involve compulsory joinder "because it would result in the State having to join charges not otherwise mandated by the statute to be joined." *Gooden*, 189 Ill. 2d at 218; accord *People v. Williams*, 193 Ill. 2d 1, 17 (2000) ("the *Williams* rule ap-

plies only when the new and original charges are subject to compulsory joinder"). We concluded that the home invasion and sexual assault charges were based on separate acts and not subject to compulsory joinder. *Gooden*, 189 Ill. 2d at 220. We then examined whether the State's decision to permissively join these charges thwarted the purposes of the speedy-trial guarantee.

The defendant contended that the continuance he requested on the home invasion charge could not be used to extend the speedy-trial period for the sexual assault charges because those charges did not exist when he requested the continuance. We agreed: "[I]t is precisely because those charges were not in existence at that time that we cannot say *** that defendant's speedy-trial rights with respect to those charges were violated." *Gooden*, 189 Ill. 2d at 221. This conclusion was merely an extension of our earlier conclusion that the home invasion and sexual assault charges were not subject to compulsory joinder.

Because we disposed of this case on compulsory-joinder grounds, we did not need to discuss the core of the appellate court's holding—namely, its refusal to follow *Williams* on whether continuances attributable to the defendant on the initial charge also apply to subsequent charges. Nonetheless, we added that consistent with *Quigley*:

"[T]he concerns that attend to the right to a speedy trial come into play in those cases where the later-filed charges are based on the 'same act' as the original charges, *i.e.*, in cases where the charges must be brought in a single prosecution. In other words, had the sexual assault charges been required under section 3—3(b) to have been joined, we would not allow the State to circumvent the original speedy-trial term. The later date could not be used by the State to 'restart' the speedy-trial period, and *any delay occasioned by such a late filing would not be attributable to the defendant*. The State would be required to bring defendant to trial on all of the charges within the original

speedy-trial term or face dismissal of the new charges. In such cases, fairness dictates that those charges 'relate back' to the date the original charges were filed." (Emphasis added.) *Gooden*, 189 Ill. 2d at 222.

In short, we disapproved of the appellate court's departure from *Williams*.

Here, the appellate court disregarded this aspect of *Gooden*, reasoning:

"Because the supreme court reversed this court's decision in *Gooden* on the basis that the charges were not subject to compulsory joinder, any further statements by the supreme court regarding delay attributable to the defendant on the originally filed charges and the later-filed charges are mere *dicta*.

\* \* \*

\*\*\* [W]e choose to adhere to our court's approach in *Gooden*. \*\*\* [W]e continue to believe that it is illogical to hold that continuances which are attributable to a defendant on an original charge are not attributable to a defendant on a latter-filed [*sic*] charge where that charge is subject to compulsory joinder. We acknowledge our supreme court's *dicta* but note that it did not clearly advise that any delay attributable to the defendant on the original charge is not retroactively attributable to the defendant on the later-filed charge. Our supreme court's statement merely indicated that any delay occasioned by such a late filing would not be attributable to the defendant. This reasonably could refer to any future delay on account of the late filing of the new and additional charges, and not necessarily to delay that had already occurred." No. 5—99—0452 (unpublished order under Supreme Court Rule 23).

Thus, the appellate court concluded that the charges were subject to compulsory joinder, but found that the delays attributable to the defendant on the contributing charge were similarly attributable to the defendant on the murder charge.

In dissent, Justice Kuehn wrote:

"I cannot think of a reason why the State would have

delayed filing the murder charges until the eve of trial other than to gain the tactical advantage of last-minute surprise—to place the defense in a state of unreadiness and to inflict the psychological frenzy that would accompany shocking news of additional, and far more serious, charges. Whatever reason the State had for filing its murder charges just days before a trial that was scheduled for some time, it is clear that its delay will eventually result in the dismissal of those charges because of speedy trial constraints.

Our view in *People v. Gooden* [citation], adhered to by the majority in affirming the denial of the motion to dismiss, has been repudiated by the Illinois Supreme Court. [Citation.] Rather than clinging to a view that our betters have discredited, we might ask ourselves why the Supreme Court bothered to publish the dicta that we have decided to ignore. It may have been trying to inform judges around the State that we were wrong—*i.e.*, that defendants can have it both ways, provided that belated charges were subject to compulsory joinder. In any event, how can we choose to ignore Supreme Court guidance?

I suppose the Supreme Court could allow us to ignore its view on this subject and adhere to our contrary view. Then again, today's *dicta* should become tomorrow's ruling. We leave the Supreme Court little choice but to devote its precious time to send us a brief message: 'We say what we mean and we mean what we say.' " No. 5—99—0452 (unpublished order under Supreme Court Rule 23) (Kuehn, J., dissenting).

*Dicta* normally comes in two varieties: *obiter dicta* and judicial *dicta. Obiter dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case. Black's Law Dictionary 1100 (7th ed. 1999). Judicial *dicta* are comments in a judicial opinion that are unnecessary to the disposition of the case, but involve an issue briefed and argued by the parties. Black's Law Dictionary 465 (7th ed. 1999). Judicial *dicta* have the force of a determination by a reviewing court and should receive dispositive weight in an inferior court. *Cates v. Cates*, 156 Ill. 2d 76, 80 (1993). Similarly, *"obiter dict[a]*

of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." *Cates*, 156 Ill. 2d at 80.

Our closing statements in *Gooden* were judicial *dicta* because they concerned an issue addressed by the parties, as well as the core of the appellate court's holding. But whether we characterize that portion of *Gooden* as judicial or *obiter dicta*, it still should have guided the appellate court in this case. Now, yesterday's *dicta* have become today's decision. In *Gooden*, when we said "any delay occasioned by such a late filing would not be attributable to the defendant," we meant just that. If the initial and subsequent charges filed against the defendant are subject to compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges.

The harm in a contrary result is obvious: a trial by ambush. The State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. As Justice Kuehn presciently observed, "All choices about requests that would delay proceedings would be made under a false understanding as a result of this deception." When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial. Today, we do not create a loophole for criminal defendants. Instead, we close a loophole which would allow the State to circumvent a statutorily implemented constitutional right. See *Gooden*, 189 Ill. 2d at 217.

Because the delays attributable to the defendant on the contributing charge in connection with Patterson's murder were not attributable to the defendant on the

murder charge pertaining to Patterson, the State violated the speedy-trial act on the murder charge. That conviction is reversed. Accordingly, the defendant cannot be convicted of two murders in this case, and a life sentence is inappropriate. See 730 ILCS 5/5—8—1(a)(1)(c)(ii) (West 1996).

### 2. Incomplete Impeachment—Kenneth Everage

The defendant next contends that the trial court abused its discretion when it allowed the State to impeach the defendant with facts not in evidence— primarily, alleged conversations between the defendant and Kenneth Everage, a cellblock acquaintance at the Madison County jail and a potential defense witness. The defendant charges that this incomplete impeachment led the jury to believe that he was a drug dealer who confessed to being involved in the shootings and who attempted to bribe a witness to implicate another person in the shootings.

The defendant initially challenges the State's cross-examination questions about his cellular telephone usage in the month before the shootings. According to the defendant, these questions were irrelevant and implied that the defendant was a drug dealer because he made hundreds of short telephone calls each month. The defendant did not object to these questions at trial, and he did not argue their impropriety in his posttrial motion. Accordingly, any review of these questions was forfeited. See *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Further, the defendant does not argue plain error or ineffective assistance of counsel regarding these questions. We turn to the more serious issue of the State's cross-examination questions concerning Everage.

In his opening statement, defense counsel previewed Everage's expected testimony. According to defense counsel, Everage would testify that he observed a serious fight between Womack and a person named Jamar Plun-

kett sometime before the shootings and later heard Plunkett threaten Womack's life. Everage also would testify that when he spoke with Plunkett after the shootings, Plunkett admitted he shot Womack. Over the State's objection, the trial court ruled that it would allow defense counsel to call Everage as a witness. Against the advice of his own attorney, Everage agreed to testify.

On the final day of defense testimony, Everage was transported to the courthouse, where he asked to speak to an assistant State's Attorney outside the presence of defense counsel. A prosecutor spoke with Everage, and defense counsel requested that the State disclose the substance of that conversation. The prosecutor stated:

> "[T]his is his own witness. He has gotten up and given an opening statement as to what Mr. Everage has said. He's interviewed Mr. Everage.
>
> I have disclosed what I have as far as Mr. Everage's previous statement to the police. Obviously, there are statements of [the defendant] to Mr. Everage while they were in the same cellblock together."

Moments later, defense counsel called Everage to the stand, and Everage refused to testify. In a sidebar outside the presence of the jury, defense counsel repeated his request that the State disclose the substance of its conversation with Everage. The prosecutor told the court:

> "Your Honor, I have considered [defense counsel's] request for disclosure, and at this time I would inform him that I have nothing in writing regarding the witness Kenneth Everage.
>
> However, I would state for him that Kenneth Everage will testify that he was offered two ounces of cocaine and $500 to make up the Jamar Plunkett story.
>
> He will testify that he has talked with [the defendant] excessively. [The defendant] has talked to him about the motive. He has talked to him about giving the gun to Terril Williams.
>
> He has talked to him about why the offense went down, and the particular details of the offense. And he has indicated that he met on numerous occasions with this

defendant, and the defendant talked about the offense extensively to him.

Mr. Everage would indicate that he wanted a deal from the State or a negotiation, and I have declined at this time to offer him anything in regards to that.

However, he did make those statements that are statements upon behalf of the defendant."

Surprised by Everage's new story, defense counsel obtained a recess. That afternoon, the defense case resumed, culminating in the defendant's testimony. On cross-examination of the defendant, the State inquired about his jailhouse contact with Everage:

"Q. Isn't it a fact that you offered Kenny Everage two ounces of crack and $500 to testify that Jamar Plunkett was involved [in the shootings]?

A. I don't know Jamar Plunkett. I don't know Kenny Everage that well. And as far as I'm concerned, this case comes from Alton, and I don't trust no one [*sic*] from Alton.

Q. Well, you heard Kenny Everage in your attorney's opening statement, didn't you?

A. Did not.

Q. You heard Kenny Everage's name in [defense counsel's] opening statement, didn't you?

A. I read it on the paper.

Q. You didn't hear him mentioned when Mr. Wallis got up here yesterday morning and said that Kenny Everage was gonna say he was involved?

A. I don't know if he said he was involved. I don't know about that now.

Q. But that he was going to be a witness about Jamar Plunkett? Don't you remember that?

A. Yes, I remember that part.

Q. Now, Kenny Everage is in the same cell block that you are, isn't he?

A. Yes, he is.

Q. And you've talked with him a lot about your case, haven't you?

A. No, I do not.

Q. Didn't you tell Kenny Everage that the gun was in Fred Williams' house?

A. Hell no. I ain't never tell [*sic*] Kenny Everage nothing like that. \*\*\*

Q. Fred Williams is your uncle, isn't he?

A. Yes, he is."

On redirect examination, defense counsel attempted to rehabilitate the defendant. The defendant again asserted that he never gave or promised anything to Everage in return for implicating Plunkett. On re-cross-examination, the State returned to the defendant's contact with Everage:

"Q. Mr. Everage, in fact, to your knowledge was willing to say that you offered him crack cocaine and money to testify to the statement that he gave you that you're suggesting, isn't he?

[Defense Counsel]: Objection to that, your Honor. I object to that on the basis that the only reason that this defendant knows that is because of it's [*sic*] acknowledgement in court."

The State requested a sidebar, which was held off the record. Back on the record, the court overruled defense counsel's objection. The State proceeded:

"Q. Now, you're saying now that you did not offer him money?

A. No, I have not."

The State never called Everage as a rebuttal witness.

Generally, the State may not impeach a defense witness on cross-examination with a prior inconsistent statement unless the State can prove that statement with extrinsic evidence if the witness denies making it. See *People v. Olinger*, 112 Ill. 2d 324, 341 (1986) ("It is improper for the prosecutor to ask a witness questions for purposes of impeachment unless the prosecutor is prepared to offer proof of the impeaching information"); see also *People v. Enis*, 139 Ill. 2d 264, 297 (1990) ("it is error for the State to ask a defense witness questions presuming facts not in evidence as a precursor to impeachment of that witness, unless the State has admissible evidence to substantiate the inquiry"). The inher-

ent danger posed by such cross-examination questions is that the jury will ignore the witness' denial, make a presumption that the insinuation created by the questions is accurate, and substitute the presumption for proof. *People v. Hood*, 229 Ill. App. 3d 202, 212 (1992), citing *People v. O'Banner*, 215 Ill. App. 3d 778, 794 (1991); see *People v. Burbank*, 53 Ill. 2d 261, 270 (1972) ("The asking of the leading question and the denial carry a harmful innuendo which is unsupported by any evidence"). The State must have a good-faith basis to ask the cross-examination questions, as well as the intent and the ability to complete its impeachment. See generally M. Graham, Cleary & Graham's Handbook of Illinois Evidence §§ 607.3, 613.3 (7th ed. 1999).

Clearly, the State's failure to call Everage in rebuttal was error. The State argues, however, that review of this error was forfeited because defense counsel failed to object when the State first asked the defendant about Everage and failed to allege in a posttrial motion that the State did not call Everage as a rebuttal witness. The defendant responds that the State lulled defense counsel into holding back an objection when it announced to the court Everage "will" testify. The defendant adds that defense counsel did not object initially to the State's questions because the error only ripened when the State did not perfect its impeachment by calling Everage in rebuttal.

In order to preserve an issue for review, a defendant must object at trial and include the issue in a posttrial motion. See *Enoch*, 122 Ill. 2d at 186. In order to preserve the issue of the State's failure to perfect impeachment of a defense witness, defense counsel must object to the State's failure to follow up its questions with additional evidence. See *People v. Williams*, 165 Ill. 2d 51, 61 (1995). Here, the defendant objected at trial, but only to the State's re-cross-examination, and only to clarify that the

defendant knew about the substance of Everage's putative testimony because of its acknowledgment in court. The State correctly observes that the defendant did not move for a mistrial when the State did not call Everage as a rebuttal witness. The State also correctly observes that the defendant did not raise the State's failure to perfect its impeachment in his posttrial motion. Instead, the defendant's posttrial motion alleged that the trial court erred in allowing the State "to improperly cross-examine defendant as to *** allegations as to the witness Kenneth Everage alleging witness perjury and offers to solicit perjury." Accordingly, review of this issue was forfeited.

The defendant claims that review of this issue is warranted as plain error. "Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court." 134 Ill. 2d R. 615(a); see *People v. Keene*, 169 Ill. 2d 1, 9-10 (1995). The plain error rule bypasses normal forfeiture principles and allows a reviewing court to consider a trial error when either (1) the evidence is closely balanced or (2) the error is "so substantial that it affected the fundamental fairness of the proceeding, and remedying the error is necessary to preserve the integrity of the judicial process." *People v. Hall*, 194 Ill. 2d 305, 335 (2000).

Here, the State's error in failing to call Everage as a rebuttal witness deprived the defendant of a fair trial. Through the State's cross-examination and re-cross-examination questions, Everage, in effect, testified against the defendant. The State's questions created the insinuation that the defendant, conscious of his guilt, tried to bribe Everage with money and drugs to finger Plunkett in an attempt to secure an acquittal. This insinuation became unanswerable when the State did not call Everage in rebuttal. Particularly where, as here, the State presented strong, but not overwhelming,

evidence of the defendant's guilt, the damaging and prejudicial effect of such a strategy is obvious. See *People v. Morris*, 79 Ill. App. 3d 318, 330 (1979) ("We can think of no evidence more damaging than the defendant's own words of guilt").

As we stated in *People v. Nuccio*, 43 Ill. 2d 375, 396 (1969):

> "Where *** the guilt of the accused is not manifest, but is dependent upon the degree of credibility accorded by the trier of fact to his testimony and that of the witnesses who testify on his behalf, and there appear in the record substantial numbers of unsupported insinuations which, if considered, could have seriously impeached the credibility of the defendant and his witnesses, *** it is our opinion that justice and fundamental fairness demand that the defendant be afforded a new trial free from such prejudicial misconduct."

Accordingly, we reverse the defendant's remaining convictions and remand for a new trial. We need not address the defendant's final issue.

## CONCLUSION

For the reasons we have discussed, the judgment of the appellate court is reversed, the defendant's conviction for first degree murder in connection with Patterson's death is reversed, the defendant's remaining convictions are reversed, and the cause is remanded for a new trial.

*Judgments reversed;*
*cause remanded.*

JUSTICE GARMAN, concurring in part and dissenting in part:

I join in Justice Thomas' dissent to the extent that it disagrees with the majority's conclusion that our holding in *People v. Gooden*, 189 Ill. 2d 209 (2000), adopted both parts of the speedy-trial rule for late-filed charges as set forth in *People v. Williams*, 94 Ill. App. 3d 241 (1981),

and the appellate court therefore was required to follow *Williams*. In all other respects, I concur in the majority opinion.

JUSTICE THOMAS, dissenting:

I disagree with the majority's conclusion that *People v. Gooden*, 189 Ill. 2d 209 (2000), adopted both parts of the speedy-trial rule for late-filed charges as set forth in *People v. Williams*, 94 Ill. App. 3d 241 (1981), and that the appellate court was therefore bound to follow *Williams*. I believe the majority wrongly reverses defendant's conviction for the murder of Patterson, holding that delay attributable to defendant on the contributing charge in connection with the murder of Patterson was not likewise attributable to defendant on the Patterson murder charge. I also believe that the State's failure to perfect its impeachment of defendant by calling Everage as a witness to testify about defendant's bribery scheme was harmless beyond a reasonable doubt and therefore did not amount to plain error. Accordingly, I respectfully dissent.

The speedy-trial statute provides that every person in custody in this state for an alleged offense shall be tried within 120 days from the date he is taken into custody, *unless delay is occasioned by the defendant*. 725 ILCS 5/103—5 (West 2000). The right to a speedy trial is a shield to protect an accused from unjust and prejudicial delays occasioned by the State, not a sword to be used to cut a defendant loose from legitimate criminal charges. *People v. Tetter*, 42 Ill. 2d 569, 576 (1969); *People v. Majors*, 308 Ill. App. 3d 1021, 1028-29 (1999).

In *Williams*, the appellate court held the following:

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts ***, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original

charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." *Williams*, 94 Ill. App. 3d at 248-49.

In *People v. Gooden*, 296 Ill. App. 3d 205 (1998), however, the appellate court refused to follow the second sentence of the above-quoted holding from *Williams*:

"[I]t is illogical to hold that continuances which are attributable to the original charges are not attributable to the later-filed charges on the basis that those charges are not before the court. The defendant cannot have it both ways. He cannot seek continuances that benefit him and enable him to better prepare for trial on the charges and then seek the dismissal of a later-filed charge on the basis that 120 days had elapsed since he was brought into custody." *Gooden*, 296 Ill. App. 3d at 210.

On appeal from the appellate court's ruling, this court affirmed the result reached by the appellate court, but on different grounds. *Gooden*, 189 Ill. 2d at 222. This court found that the later-filed charges were not subject to compulsory joinder. The State, therefore, could bring the later-filed charges at its choosing, and the speedy-trial clock did not begin to run on the later-filed charges until the date they were filed. *Gooden*, 189 Ill. 2d at 221-22. In *dicta*, this court stated that, if the new charges had been subject to mandatory joinder, "[t]he later date could not be used by the State to 'restart' the speedy-trial period, and any delay *occasioned by such a late filing* would not be attributable to the defendant." (Emphasis added.) *Gooden*, 189 Ill. 2d at 222.

*Gooden* did not specifically address the concern in this case—whether delay attributed on the earlier charges would be attributed on the later charges. Instead it merely noted two general principles: (1) the date of the later filing cannot be used to " 'restart' " the speedy-trial period; and (2) any delay *occasioned by the late filing*

would not be attributable to defendant. *Gooden*, 189 Ill. 2d 209. The majority accuses the appellate court here of refusing to follow this court's *dicta* in *Gooden*, stating that when we said " 'any delay' " would not be attributable to defendant, "we meant just that." 204 Ill. 2d at 207. The majority's criticism, however, ignores that the key phrase from *Gooden* actually reads "any delay occasioned by such a late filing would not be attributable to the defendant." *Gooden*, 189 Ill. 2d at 222. The appellate court grappled with our *dicta* in *Gooden* and found that the "statement merely indicated that any delay occasioned by such late filing would not be attributable to the defendant." It then found that "this reasonably could refer to any future delay on account of the late filing of the new and additional charges, and not necessarily to delay that had already occurred." Under these circumstances, it is clear that the appellate court attempted to follow our *dicta*, not reject it as the majority posits.

Taking the phrase about delay in context, I would conclude that when this court said "delay occasioned by such a late filing" (*Gooden*, 189 Ill. 2d at 222), it meant any future delay caused by the filing of the late charges. I think it obvious that the continuances defendant sought to better prepare for trial on the contributing charge cannot be deemed "delay occasioned by the late filing." Moreover, common sense indicates that previous delay attributable to defendant on the earlier charge should also be attributable to defendant with respect to the later-filed charges. Otherwise, a defendant receives a windfall—the State is required to join all charges in a single prosecution with the speedy-trial clock beginning to run with the first-filed charge *and* continuances granted at *a defendant's request* only toll the clock with respect to the first charge, not the later charges.

I believe that the appellate court's interpretation better comports with logic and the limited nature of the

language used by this court in *Gooden*. It would also prevent the improper use of the speedy-trial statute as a sword instead of a shield. See, *e.g.*, *State v. DeSantiago*, 108 Wash. App. 855, 874-75, 33 P.3d 394, 402-03 (2001) (speedy-trial period begins to run with the earliest-filed charge in a compulsory-joinder setting and delays attributable to defendant on the earliest charge are attributable to defendant on the later charges, but continuances necessary to prepare defendant for later-filed charges do not toll speedy trial clock).

The majority struggles to find some kind of harm that would be caused by the appellate court's interpretation, and states as follows: "When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial." 204 Ill. 2d at 207. I believe the majority's concern is unfounded, as it again ignores the clear language of *Gooden* that *any future delay occasioned by the late filing is attributable to the State*. If the State subsequently files additional charges, a defendant would be entitled to a continuance to prepare for those charges provided additional preparation was reasonably needed. The *dicta* in *Gooden* specifically indicates that this delay would be chargeable to the State. Under the appellate court's interpretation, then, defendant would be assured of adequate trial preparation and would not be subject to one second more detention time than is allowed by the speedy-trial statute. Yet, he would not receive a windfall in the form of having his delay on the earlier charges transferred to the State on the later charges.

Here, defendant sought and was granted continuances to prepare for trial and develop a defense in connection with the charge of contributing to the delinquency of a juvenile. The same factual elements used to convict him of the contributing charge were used to

convict him of the Patterson murder charge. By allowing defendant to successfully assert the speedy-trial statute as a bar to his prosecution of the murder charge under these circumstances, the majority has opened a new procedural loophole that can be used to obstruct the ends of justice. For the reasons stated, I would affirm defendant's conviction for the murder of Patterson.

I also disagree with the majority's reversal of the remainder of defendant's convictions. I believe that the appellate court correctly found that the State's failure to perfect its impeachment of defendant by presenting the testimony of Everage was harmless beyond a reasonable doubt.

By failing to raise a specific objection at trial and mention it again in a posttrial motion, defendant waived the issue of whether the State erroneously insinuated during cross-examination that defendant had attempted to bribe Everage. *People v. Enoch*, 122 Ill. 2d 176, 186 (1988). Plain error is a limited and narrow exception to the general waiver rule, to be invoked only where the evidence is closely balanced or the alleged error is so substantial that it deprived the defendant of a fair trial. *People v. Kuntu*, 196 Ill. 2d 105, 128 (2001). The second part of the plain error doctrine applies only where the claimed error is so grave that its consideration is necessary to preserve the integrity and reputation of the judicial process, thereby preventing the denial of a fair trial. *Kuntu*, 196 Ill. 2d at 128. In that regard, the incomplete impeachment of a witness only rises to the level of reversible error where the allegedly unfounded insinuation is substantial, repeated, and prejudicial because of the closeness of the evidence. *People v. Amos*, 204 Ill. App. 3d 75, 82 (1990). In other words, such evidence deprives the defendant of a fair trial only when it constitutes a material factor in the defendant's conviction so that, without the evidence, the verdict likely

would have been different. *People v. Cortes*, 181 Ill. 2d 249, 285 (1998).

Here, the majority as much as acknowledges that the evidence of defendant's guilt was not closely balanced, noting that the State presented "strong" evidence of defendant's guilt. 204 Ill. 2d at 213-14. Moreover, the number of insinuations were not substantial; the State did not even mention, let alone emphasize, the Everage bribery attempt in its closing argument. Given that the evidence against the defendant was *not* closely balanced, I believe that any error was harmless, as it does not appear that, without the evidence, the verdict would likely have been different (*Cortes*, 181 Ill. 2d at 285).

For the foregoing reasons, I dissent.