# FOR PUBLICATION



ATTORNEY FOR APPELLANT:

**STANLEY L. CAMPBELL**
Fort Wayne, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**RICHARD C. WEBSTER**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| LARRY D. KNOX, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 02A03-1312-CR-491 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE ALLEN SUPERIOR COURT
The Honorable Wendy W. Davis, Judge
Cause No. 02D05-1302-FD-182

**July 16, 2014**

**OPINION - FOR PUBLICATION**

**NAJAM, Judge**

**STATEMENT OF THE CASE**

Larry D. Knox appeals his conviction for torturing or mutilating a vertebrate animal, a Class D felony, following a bench trial. Knox raises a single issue for our review, namely, whether the State presented sufficient evidence to support his conviction. We affirm.

**FACTS AND PROCEDURAL HISTORY**

In the evening of December 4, 2012, Knox came home and found "a cat in his house." Tr. at 18. Knox "tried to remove the cat by opening the front door and kicking the cat outside," but instead of leaving, the cat "hissed and then ran around him and entered the bedroom area." Id. at 19. When he kicked the cat, "he kicked it very hard[;] hard enough to knock the front tooth out of the cat" such that the tooth "flew out" of the cat's mouth. Id. at 20, 23. Knox then followed the cat into his bedroom, "pretty much destroyed his bedroom chasing after the cat," and "kick[ed] it a couple more times." Id. at 23. The last time Knox kicked the cat, "he kicked it pretty hard" and "dazed" it. Id. Knox then called for an animal control officer.

At 9:45 p.m., Fort Wayne Animal Control Officer Jason Miller responded to Knox's call. Officer Miller met Knox in front of Knox's house, and Knox described the preceding events to Officer Miller. Officer Miller entered the residence with Knox's permission and observed the cat's upper left canine on the floor, along with blood spatter. Officer Miller asked Knox why he kicked the cat, and Knox responded by stating that "[h]e didn't like cats." Id. at 24. Officer Miller asked Knox if he felt threatened by the cat, and Knox said "no." Id. At one point, Knox "began joking around about how far the

2

tooth had . . . flown from the cat." Id. at 25. Knox did not have any injuries from the cat and stated that the cat had not made contact with him.

In the bedroom, Officer Miller located the cat and observed that it had blood on its face and paws. The cat was motionless, but when Officer Miller began to gently stroke the cat it had no reaction, which told Officer Miller that the cat was not feral. Officer Miller picked up the cat, and it started moving its head "from side to side" and its eyes were moving back and forth, which told Officer Miller that the cat had suffered "some sort of a head injury." Id. at 26. Officer Miller secured the cat in a cage, again, without any display of aggression from the cat, and took it to an emergency veterinary clinic. There, Animal Care Supervisor Laura Rowe observed that the cat, while clearly injured, was "quiet" and "friendly" and "would allow [herself] to be petted." Id. at 43. However, due to the extent of the cat's injuries, emergency veterinarians were unable to do a full exam.

On December 8, Rowe took the cat to the St. Joseph Veterinary Hospital in Fort Wayne. Doctors there were able to anesthetize the cat and take dental x-rays, and the cat required "minimal restraint" when an IV was placed in her front arm. Id. at 44. Doctor Jennifer Stresemann reviewed the x-rays and testified that the results were "consistent with what [Knox] said about kicking the cat in the mouth." Id. at 66. Cats need their canine teeth for hunting, tearing food, and eating, and these teeth are "hooked into . . . the top part of the skull" by strong ligaments. Id. at 65. Doctor Stresemann added that, "to take the tooth totally out of [the] mouth . . . would take some very precise [sic] and it would take a lot of force behind it." Id. at 66. Doctor Stresemann further opined that,

3

when the cat was kicked, it must "have either been in a sitting or a crouched down position." Id. at 68.

The State charged Knox with torturing or mutilating a vertebrate animal, a Class D felony. The State called Officer Miller, Rowe, Doctor Stresemann, and others as witnesses. In his own defense, Knox testified that he kicked the cat only after it "came straight at me." Id. at 83. The court found Knox guilty and sentenced him to one year in the Department of Correction. This appeal ensued.

## DISCUSSION AND DECISION

Knox asserts that the State failed to present sufficient evidence to support his conviction. When reviewing a claim of sufficiency of the evidence, we do not reweigh the evidence or judge the credibility of the witnesses. Jones v. State, 783 N.E.2d 1132, 1139 (Ind. 2003). We look only to the probative evidence supporting the judgment and the reasonable inferences that may be drawn from that evidence to determine whether a reasonable trier of fact could conclude the defendant was guilty beyond a reasonable doubt. Id. If there is substantial evidence of probative value to support the conviction, it will not be set aside. Id.

Under Indiana Code Section 35-46-3-12(c), "[a] person who knowingly or intentionally tortures or mutilates a vertebrate animal commits torturing or mutilating a vertebrate animal, a Class D felony."[1] However, it is an affirmative defense to a

---

[1] To mutilate an animal means

to wound, injure, maim, or disfigure an animal by irreparably damaging the animal's body parts or to render any part of the animal's body useless. The term includes bodily injury involving:

4

prosecution under this section that the accused reasonably believed his conduct was necessary to prevent injury to himself or to protect his property from destruction or substantial damage. Ind. Code § 35-46-3-12(e)(1)(A), (B). Thus, Knox asserts that he did not knowingly or intentionally mutilate the cat because "[i]t was not Knox's intent to injure the animal" but, rather, "[h]is intention was to ward off the cat and prevent injury to himself." Appellant's Br. at 6.

While the mens rea element of Indiana Code Section 35-46-3-12(c) has not specifically been addressed by this court or the Indiana Supreme Court, it is nonetheless well established that

> Indiana Code Section 35-41-2-2 states, "[a] person engages in conduct 'intentionally' if, when he engages in the conduct, it is his conscious objective to do so." "Intent can be inferred from a defendant's conduct and the natural and usual sequence to which such conduct logically and reasonably points." E.H. v. State, 764 N.E.2d 681, 683 (Ind. Ct. App. 2002), trans. denied. "The fact finder is entitled to infer intent from the surrounding circumstances." Id. Intent is a mental function; hence, absent a confession, it often must be proven by circumstantial evidence.

Hightower v. State, 866 N.E.2d 356, 367-68 (Ind. Ct. App. 2007), trans. denied. And one engages in conduct "knowingly" if, when he engages in the conduct, he is aware of a high probability that he is doing so. I.C. § 35-41-2-2(b).

Here, the evidence most favorable to the judgment demonstrates that Knox knowingly or intentionally mutilated the cat. Officer Miller testified that Knox admitted

---

(A) serious permanent disfigurement;
(B) serious temporary disfigurement;
(C) permanent or protracted loss or impairment of the function of a bodily part or organ; or
(D) a fracture.

Ind. Code § 35-46-3-0.5(3). Knox concedes that the cat's injuries demonstrate that he mutilated the cat. Appellant's Br. at 6.

5

to kicking the cat violently, knocking its tooth out, and then joking about how far the tooth had flown out of the cat's mouth. Doctor Stresemann testified that the cat's injuries demonstrated that the cat was either sitting or in a crouched position when Knox violently struck it. And Officer Miller testified that the cat was not feral, and he and Rowe stated that the cat was docile and friendly. The fact-finder was entitled to infer Knox's intent from these circumstances.

Moreover, Knox's argument on appeal that he reasonably believed his conduct was necessary to prevent injury to himself is based on his own testimony that he kicked the cat only after it "came straight at me." Tr. at 83. But nothing about this testimony demonstrates that Knox's belief was reasonable. Further, Knox's argument on appeal is premised on his credibility, which the fact-finder was free to wholly disregard. And we are in no position to challenge the fact-finder's assessment of Knox's credibility on appeal. We affirm the trial court's judgment.

Affirmed.

VAIDIK, C.J., and BROWN, J., concur.