2021 IL App (1st) 190681-U

1-19-0681

Filed September 16, 2021

Fourth Division

**NOTICE**: This order was filed under Supreme Court Rule 23 and is not precedent except for the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the Circuit Court |
| | ) | of Cook County. |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 18 CR 12138 |
| | ) | |
| LOUIS RHODES, | ) | Honorable |
| | ) | Ursula Walowski, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE MARTIN delivered the judgment of the court.
Justices Lampkin and Rochford concurred in the judgment.

**ORDER**

¶ 1    *Held*:  Defendant's right to a speedy trial was not violated when the State prosecuted the defendant on a superseding indictment obtained more than 120 days from the defendant's arrest since the armed habitual criminal charge in the superseding indictment was not new and additional but merely amended the same charge from the original indictment by replacing a void conviction with a valid conviction as one of two specified predicate offenses.

¶ 2    Louis Rhodes appeals his conviction for violating the armed habitual criminal (AHC) statute, claiming that the trial court erred by denying his pretrial motion to dismiss the indictment

on speedy trial grounds. After a bench trial, Rhodes was convicted of AHC and sentenced to a prison term of 10 years in the Illinois Department of Corrections. We affirm.[1]

¶ 3                                    I. BACKGROUND

¶ 4        Initially, Rhodes was indicted on June 15, 2017, in case 17 CR 8990 for AHC and other offenses related to a May 29, 2017, incident where he was found to possess a firearm. Possession of a firearm constitutes AHC when an offender has two or more prior convictions for any of the felonies enumerated in the statute. 720 ILCS 5/24-1.7(a) (West 2016). The AHC count in 17 CR 8990 asserted that Rhodes had been previously convicted of armed robbery in a 2009 case and aggravated unlawful use of a weapon (AUUW) in a 2006 case, both of which are qualifying predicate offenses for AHC.

¶ 5        Rhodes's 2006 AUUW conviction was rendered void by our supreme court's decision in *People v. Aguilar*, 2013 IL 112116, which found the relevant provision of the AUUW statute unconstitutional. However, pursuant to the supreme court's decision in *People v. McFadden*, 2016 IL 117424, which was in effect at the time Rhodes was first indicted, a void AUUW conviction could serve as a qualifying predicate offense for AHC if it had not been vacated before the commission of the AHC charge. Rhodes's AUUW conviction had not been vacated before May 29, 2017. Later, the supreme court overruled *McFadden* in *In re N.G.*, 2018 IL 121939, reasoning that a conviction based on a statute found to be facially unconstitutional, like the AUUW provision at issue in *Aguilar*, is void *ab initio* and must be treated as though it never existed. Consequently, a void AUUW conviction could no longer serve as a predicate offense for AHC.

¶ 6        Due to the ruling in *In re N.G.*, the State sought a new indictment of Rhodes related to the May 29, 2017 incident. On August 28, 2018, the grand jury returned an indictment in case 18 CR

---

[1] In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

12138, again charging Rhodes with AHC and other offenses arising out of the May 29, 2017 incident. In the new indictment, however, the AHC count set forth a prior felony conviction for delivery of a controlled substance (DCS) from a 2005 case instead of the 2006 AUUW conviction as a predicate offense. The same 2009 armed robbery was also cited as a predicate conviction.

¶ 7        Before trial, Rhodes filed a motion to dismiss the AHC count in the superseding indictment. The motion argued that the State violated his right to a speedy trial. Rhodes asserted that the AHC count in the superseding indictment was a new and additional charge arising from the same facts as the original indictment. As such, the "new" AHC charge was subject to compulsory joinder and the statutory time limit in which the State must bring Rhodes to trial. Further, under these circumstances, continuances are solely attributable to the State. And as the time limit of 120 days since Rhodes was first arrested had passed, he contended the State could not prosecute him for the "new" AHC charge and it must be dismissed.[2] The trial court denied the motion finding that Rhodes's right to a speedy trial had not been violated. The court characterized the superseding indictment as an amendment rather than "new" charge and stated that the court interpreted case law to permit the State to amend charges in this manner.

¶ 8        In the subsequent bench trial, Chicago Police Officer Jaime Acosta testified that he observed Rhodes smoking a "blunt" (cigarillo filled with cannabis) at the corner of West 13th Street and South Avers Avenue in Chicago around 5 a.m. on May 29, 2017. Upon detecting the odor of cannabis, Officer Acosta asked Rhodes to approach the police vehicle Acosta was driving. Rhodes responded, "I have a warrant" and "please don't." As Officer Acosta opened his vehicle door, Rhodes fled on foot. Officer Acosta maneuvered his vehicle and pursued Rhodes for a short distance. Officer Acosta then exited his vehicle and pursued Rhodes on foot. While chasing him,

---

[2] Rhodes was in continuous custody since May 29, 2017.

Officer Acosta observed Rhodes discard a handgun into a fenced garden. Officer Acosta eventually apprehended Rhodes in an alley nearby. After placing Rhodes in handcuffs and leaving Rhodes in the custody of his partner, Officer Acosta returned to the area where he had observed Rhodes throw the handgun. There, he recovered a loaded, black 9 mm Taurus Millennium G2 semi-automatic handgun. Officer Acosta authenticated body camera video from another officer who was present for the search of the garden and recovery of the handgun. The State introduced certified copies of Rhodes's prior armed robbery and DCS convictions.

¶ 9        The court found Rhodes guilty of AHC and two counts of unlawful use of a weapon by a felon (UUWF). Rhodes filed a motion for new trial, which included a claim that the court erred by denying his motion to dismiss the AHC count. The trial court denied the motion for new trial and subsequently sentenced Rhodes to 10 years in prison.[3] This appeal followed.

¶ 10                                II. ANALYSIS

¶ 11        On appeal, Rhodes solely challenges the trial court's ruling on his pretrial motion to dismiss the AHC count in the superseding indictment. He argues, as he did before the trial court, that the later AHC count was a "new and additional" charge subject to compulsory joinder rendering his prosecution on the charge after he had been in custody for 120 days a violation of his right to a speedy trial. He requests that we vacate his AHC conviction and remand for resentencing on the UUWF counts.

¶ 12        The Illinois speedy trial statute provides, "[e]very person in custody in this State for an alleged offense shall be tried by the court having jurisdiction within 120 days from the date he or she was taken into custody unless delay is occasioned by the defendant." 725 ILCS 5/103-5(a) (West 2016). The 120-day speedy trial period is tolled whenever the defendant causes a period of

_____

[3] The UUWF counts merged into the AHC count as lesser included offenses.

delay or otherwise agrees to a delay. *People v. Woodrum*, 223 Ill. 2d 286, 299 (2006). When a defendant is not tried within this period, he or she is entitled to release from custody and dismissal of the pending charges. *Id.*

¶ 13     A speedy trial analysis "becomes more complicated when the defendant is charged with multiple, but factually related, offenses at different times." *People v. Williams*, 204 Ill. 2d 191, 198 (2003). "Delays attributable to a defendant in connection with the original charges *** are not always attributable to the defendant on subsequently filed charges." *Woodrum*, 223 Ill. 2d at 299. To determine whether delays attributed to a defendant with respect to original charges should remain attributable to that defendant for subsequent charges, Illinois courts use the *Williams* rule, which states:

> " 'Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained.' " *People v. Phipps*, 238 Ill. 2d 54, 66 (2010) (quoting *People v. Williams*, 94 Ill. App. 3d 241, 248-49 (1981)).

¶ 14     The purpose of the *Williams* rule is to prevent " 'trial by ambush.' " *Id.* at 67. Our supreme court explained that without the rule:

> "[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. ***

When the State filed the more serious charges, the defendant would face a Hobson's choice[4] between a trial without adequate preparation and further pretrial detention to prepare for trial." *Id*. (quoting *People v. Williams*, 204 Ill.2d 191, 207 (2003)).

¶ 15    Since guarding against "trial by ambush" is the rationale underlying the *Williams* rule, our supreme court has limited the rule and found that it should not apply when the subsequent charges are not "new and additional." *Id*. Subsequent charges are not "new and additional" when "the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those charges." *Id*. If the original charging document gives a defendant adequate notice of the subsequent charges, the *Williams* rule's rationale is obviated. The ability to prepare for trial on the subsequent charges is not hindered and the defendant will not face "a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial." (Internal quotation marks omitted). *Id*. at 67-68.

¶ 16    Whether charges are "new and additional" under the *Williams* rule is a legal question, which we review *de novo*. *Id*. at 67. The analysis "involves a comparison of the original and subsequent charges." *Id*. Our inquiry is focused on "whether the original charging instrument gave the defendant sufficient notice of the subsequent charges to prepare adequately for trial on those [new] charges." *Id.*

¶ 17    Here, both the original and superseding indictments charged Rhodes with the same offense—violating the armed habitual criminal statute—based on the same conduct—possessing a firearm on May 29, 2017. The only difference was that the original indictment charged Rhodes with AHC predicated on prior convictions for a 2009 armed robbery and a 2006 aggravated unlawful use of a weapon while the superseding indictment charged Rhodes with AHC predicated

_____

[4] A Hobson's choice is an apparently free choice when there is no real alternative. Merriam-Webster Dictionary, Merriam-webster.com/dictionary/Hobson%27s%20choice (last visited September 7, 2021).

on the same 2009 armed robbery and a 2005 delivery of a controlled substance. Prior qualifying convictions are an element of AHC, which the state must prove to establish the offense. *People v. Adams*, 404 Ill. App. 3d 405, 414 (2010).

¶ 18    Although the difference in the AHC charge contained in the superseding indictment pertained to an element of the offense, "not all variances in the elements between original and subsequent charges will render the latter new and additional charges." *People v. Moffett*, 2019 IL App (2d) 180964, ¶ 41. For example, in *Phipps*, the State charged the defendant with aggravated DUI in place of reckless homicide. The difference in charges eliminated an element—recklessness—but the subsequent charge " 'alleged the same conduct' " of driving under the influence and killing the victim in a collision. *Id.* (quoting *Phipps*, 238 Ill. 2d at 68). Therefore, the subsequent charge was not new and additional.

¶ 19    Similarly, in *People v. Whitlock*, 2018 IL App (1st) 152978, the State's subsequent charge changed a felony murder count to knowing murder and added a charge of reckless homicide. This court found the change from felony murder count to knowing murder was permissible because the State is not required to particularize its theory of murder. *Id.* ¶ 41. For the reckless homicide charge, which required different elements to be proven, the court found it was not new and additional because "the original indictment put defendant on notice that the State intended to hold him accountable for the death [of the victim] and he should prepare his defense related to his conduct in driving and hitting her." *Id.* ¶ 44.

¶ 20    In this case, the original indictment put Rhodes on notice that the State intended to hold him accountable for possessing a firearm after having been convicted two or more times of qualifying offenses. Therefore, we find that the original indictment provided sufficient notice of the subsequent AHC charge—which likewise sought to hold him accountable for possessing a

firearm after two or more qualifying convictions—such that he could prepare adequately for trial. A defendant should be aware of his or her prior convictions. Nonetheless, such information is routinely requested and provided in discovery. Apart from that, as Rhodes's brief recognizes, "[p]ast convictions are typically matters of public record." *People v. Watson*, 322 Ill. App. 3d 164, 167 (2001). Therefore, the original indictment gave Rhodes ample reason to know of his prior DCS conviction and the ability to prepare for trial if the State were to rely on it to prove qualifying offenses for AHC.

¶ 21 We note that prior convictions, as an element of AHC, do not enhance the sentence and, therefore, are not required to be stated with particularity in the charging instrument pursuant to section 111-3(c) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(c) (West 2016)). In *People v. Adams*, where a defendant argued a similar speedy trial violation, this court stated that the actual predicate offenses listed in an indictment charging a defendant for AHC are "surplusage." *Adams*, 404 Ill. App. 3d. at 415.

¶ 22 Rhodes argues that *Adams* is distinguishable because, in that case, the State amended an indictment to correct the name of one of the predicate offenses listed in an AHC count. The indictment originally set forth the correct case number but misstated the offense as aggravated discharge of a firearm instead of the actual conviction of armed robbery. The court characterized the error as a "miswriting," which could be amended on the State's motion under section 111-5 of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-5(a) (West 2006)). *Id*. In contrast, the superseding indictment in this case did not merely correct a miswriting. It stated a different predicate offense, which had a meaningful consequence—the void AUUW could not establish a necessary element of AHC while the valid delivery of a controlled substance could.

¶ 23    To be sure, *Adams* did not involve the precise situation presented in this case, as Rhodes points out. Nevertheless, we reach the same conclusion as the *Adams* court that Rhodes's speedy trial right was not violated by the State's amendment of the AHC charge—in this case, through a superseding indictment. As we stated, the original indictment gave Rhodes sufficient notice to adequately prepare for trial on the subsequent charge. The superseding indictment did not create a "trial by ambush" forcing him to make a Hobson's choice between going to trial unprepared or requesting another continuance while remaining in custody. Nor does the record support that the State lulled him into acquiescing to continuances so it could prepare more serious charges.

¶ 24    We find the cases Rhodes relies on readily distinguishable. In both *People v. Quigley*, 183 Ill. 2d 1 (1998) and *People v. Van Schoyck*, 232 Ill. 2d 330 (2009), the State attempted to circumvent the defendants' speedy trial demands by dismissing initial charges and then refiling identical or related charges later. Nothing comparable occurred here. Rhodes never made a speedy trial demand, and the record rebuts any suggestion that the State's purpose behind seeking a subsequent indictment was to circumvent Rhodes's speedy trial rights.

¶ 25                                    III. CONCLUSION

¶ 26    For the reasons stated, we affirm the judgment of the trial court.

¶ 27    Affirmed.