No. 2--03--1358

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--CF--890 |
| JIMMY A. BOYD, | ) ) | Honorable Robert J. Anderson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BYRNE delivered the opinion of the court:

Two men broke into the home of Ernesto Quiles and Martha Zinda on the morning of January 12, 2003. One of the men repeatedly "pistol-whipped" Quiles and Zinda in the head and also shot Quiles twice. After Quiles was released from the hospital, he and Zinda reluctantly identified defendant, Jimmy A. Boyd, as the assailant who inflicted their injuries.

A jury found defendant guilty of one count of aggravated battery (720 ILCS 5/12--4(a) (West 2002)), one count of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 2002)), and four counts of home invasion (720 ILCS 5/12--11(a)(3), (a)(5) (West 2002)). The trial court merged the charges into two counts of home invasion and imposed concurrent terms of 55 and 45 years' imprisonment (720 ILCS 5/12--11(c) (West 2002)).

Defendant was acquitted of two counts of armed robbery (720 ILCS 5/18--2(a) (West 2002)).

Defendant appeals, arguing that (1) the delayed filing of the home invasion charges violated his speedy-trial rights and therefore his trial attorney was ineffective for failing to move for their dismissal; (2) the State failed to prove him guilty beyond a reasonable doubt; (3) the trial court incorrectly instructed the jury regarding eyewitness identification testimony; (4) the two convictions of home invasion violate one-act, one-crime principles; and (5) the 15-year sentencing enhancement for committing home invasion while possessing a firearm is unconstitutionally disproportionate to the penalty for aggravated battery with a firearm. The State concedes that one of defendant's home invasion convictions must be vacated on one-act, one-crime grounds, but the State disputes defendant's remaining claims, arguing that defendant waived the jury instruction issue.

We hold that trial counsel was ineffective for failing to invoke defendant's right to a speedy trial on the home invasion counts, and therefore, those charges must be dismissed. We further conclude that the evidence supports the jury's guilty verdict on the lesser-included offenses of aggravated battery and aggravated battery with a firearm and that the trial court did not commit plain error in instructing the jury. We reject defendant's assertion that he is entitled to a new trial. We reverse defendant's convictions of home invasion and remand the cause for the trial court to sentence defendant on the counts of aggravated battery and aggravated battery with a firearm. Our analysis renders defendant's remaining contentions moot. See Jackson v. Callan Publishing, Inc., 356 Ill. App. 3d 326, 342 (2005) (a case is moot when it does not involve any actual controversy or where the issues involved in the trial court have ceased to exist).

FACTS

We initially summarize the evidence presented at trial. Quiles testified that, in January 2003, he resided in a basement apartment in Addison with Zinda and the couple's daughter. Quiles had met defendant through a mutual friend, Tony Ogle, and had known defendant for approximately one year. Ogle and defendant lived together. At least once, defendant had the opportunity to overhear Quiles discussing cocaine dealing.

On January 9, 2003, defendant, Ogle, and a man named "Dave" helped Quiles move a couch and wide-screen television in Quiles's apartment. After the move, Quiles retrieved $500 from a safe in his bedroom to repay a loan to Dave. Defendant saw the transaction. While in the bedroom, Quiles showed defendant an aquarium containing exotic frogs.

Three days later, at approximately 7 a.m. on January 12, 2003, Quiles awoke to a loud crash in the living room. Quiles exited his bedroom and saw a person, whom he identified as defendant, holding a handgun to Zinda's head. An Hispanic man was also present, but Quiles did not recognize him. Defendant was wearing dark pants and a pullover sweatshirt with a "hood that kind of cover[ed his] eyebrows in a way." Defendant ordered Zinda and Quiles to the floor and asked for the location of "the safe." Quiles claimed that he did not own a safe, and defendant struck Zinda and Quiles in the head with the gun while demanding the location of the safe. Defendant's partner unsuccessfully searched for the safe in the bedroom and repeatedly reported that he could not find "the money." While standing in the hallway, defendant directed his partner to turn on a light that sat on the bedroom dresser.

Defendant and his partner grew frustrated, and defendant threatened to rape Zinda in Quiles's presence if the safe was not disclosed. Quiles explained that he did not disclose the location of the safe because it contained a gun as well as money, and Quiles feared getting shot. Quiles grabbed defendant's arm but "freaked out" and released him. Quiles testified that he "got a very good look" at defendant's face and recognized his voice and unique "sunken" eyes. Defendant again struck Quiles in the head with the gun, and defendant's partner exited the bedroom. Quiles heard two gunshots, felt his stomach burn, and felt something pass through his leg. Defendant and the Hispanic man left.

Before the paramedics arrived, Quiles directed Zinda "to tell the police that [Ogle's] boys did it." Ogle and defendant were members of the Simon City Royals street gang, which was affiliated with the Folks nation. Quiles had been a member of the Latin Kings gang when he was younger. Quiles was treated for several days in intensive care for the two gunshot wounds. Ogle visited Quiles in the hospital, and Quiles feared that Ogle was involved in the attack. Quiles also feared for the safety of his daughter and Zinda because they still resided in the apartment.

The police interviewed Quiles several times in the hospital. When Quiles was shown a photographic lineup that included defendant, Quiles did not identify defendant as the attacker but stated that he "might have been involved." At that time, Quiles was "100%" certain that defendant was involved, but he did not tell the police because he and his family felt vulnerable. At the start of one interview, Quiles asked an officer whether defendant was in custody. However, Quiles never requested police protection. Quiles assisted in the creation of a police sketch of the intruder, but he was not "up front" with the police about

the intruder's identity because he was scared. Quiles told the police that Ogle's friends might have been involved but that defendant was an "okay friend."

On the date Quiles was released from the hospital, he telephoned the police and told them that defendant was the attacker. Quiles stated that he felt safe to discuss the incident only after he could walk and his family had moved and changed telephone numbers. Defendant was arrested. The police subsequently informed Quiles that he had been "caught on tape dealing cocaine." Quiles agreed to serve as an informant in drug investigations, but he insisted that his testimony was not influenced by any threats or promises of leniency. Quiles admitted to dealing approximately one ounce of cocaine per week during the previous year, but he denied any personal use. At trial, the parties stipulated that a metabolite of cocaine was detected in Quiles's urine at the hospital.

Zinda corroborated Quiles's testimony. She testified that, on the morning of the incident, a babysitter was watching the couple's daughter. Zinda and some friends had been out for early morning drinks and breakfast after work, and Zinda arrived home at 7 a.m. Zinda was sitting at her computer when she heard someone break the living room window. She "got a good look" at the intruder as he jumped through the window and walked toward her. He wore a dark blue jacket with a loose hood covering his head, and he carried a flat, dark gun. Zinda recognized the attacker as defendant, whom she met during the television move a few days earlier. Defendant grabbed Zinda's hair and neck and dragged her into the hallway while holding a handgun to her head. Zinda was "100%" certain that defendant was the attacker. Defendant asked Zinda, "Where is your boyfriend?" By that time, Quiles was standing in the hallway. Defendant struck Zinda and Quiles in the

head several times with the gun after ordering them to lie prone on the floor.  Photographs introduced into evidence showed that Quiles suffered two gunshot wounds and that Zinda's head injuries required several stitches.

Zinda stated that Quiles directed her to be vague when describing the man with the gun because they feared defendant's retaliation.  Zinda identified defendant in the photographic lineup and told the police that the attacker with the gun appeared to be "[Ogle's] friend" who had "helped move the couch."

Addison police detective Brian Goss testified that he spoke with defendant at the police station about the incident.  Defendant volunteered that he knew Quiles had been shot and that they had "part[ied] together" at Ogle's home in the past.  Defendant said that Quiles often flaunted his wealth and bragged about his belongings.  Defendant appeared jealous of Quiles.  Defendant further asserted that Zinda had told him that people routinely stopped at the apartment's living room window, but she was unsure why.  At trial, Zinda denied making any such statement to defendant.

Goss testified that, when he interviewed Quiles at the hospital, he was responsive and specific and had a good recollection of the incident, but struggled to answer questions because he was in pain.  Upon his release from the hospital, Quiles positively identified defendant, explaining to Goss that he did not feel safe to do so until he and his family had moved into his mother's home.  Quiles also told Goss that he believed the morphine he had taken at the hospital had adversely affected his memory. Zinda similarly explained to Goss that her delay in identifying defendant was caused by the trauma of the event.

Defendant introduced the testimony of Officers John Beeman, Roger Saran, and John Sinkule, who each testified to the victims' equivocal identification of the attacker. On the morning of the incident, Zinda stated that she had never seen the offenders before, and Quiles did not indicate that he knew either of them. However, Quiles disclosed that they chanted "let's go Folks" before leaving the apartment. Zinda told Sinkule that the offenders were "[m]ale white or male Hispanic, in their 20's, [and] possible gang bangers," but that she could not provide a better description because they directed her to look at the floor the entire time. Officer Saran testified that, while searching the apartment for evidence, he found $10,000 in the safe, $2,500 in a shoe, $700 in a kitchen drawer, and drug paraphernalia including smoking pipes, rolling papers, and an electronic scale.

On October 2, 2003, the jury found defendant guilty of one count of aggravated battery, one count of aggravated battery with a firearm, and four counts of home invasion. The jury found defendant not guilty of two counts of armed robbery. On December 5, 2003, the trial court merged the charges into two counts of home invasion and imposed concurrent terms of 55 and 45 years' imprisonment based on defendant's use of a firearm in attacking Quiles and Zinda. Defendant filed a notice of appeal on December 9, 2003, without first filing a posttrial motion.

ANALYSIS

A. Ineffective Assistance of Counsel and Speedy-Trial Rights

Defendant initially argues that his trial counsel was ineffective for failing to invoke his speedy-trial rights. A claim of ineffective assistance of counsel is judged according to the two-prong, performance-prejudice test established in Strickland v. Washington, 466 U.S.

668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). People v. Lawton, 212 Ill. 2d 285, 302 (2004); People v. Albanese, 104 Ill. 2d 504, 526-27 (1984). To obtain relief under Strickland, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. Lawton, 212 Ill. 2d at 302.

"An attorney's failure to seek discharge of his client on speedy-trial grounds generally will be deemed ineffective assistance of counsel if there is a reasonable probability that the defendant would have been discharged had a timely motion for discharge been made and no justification has been proffered for the attorney's failure to bring such a motion." People v. Staten, 159 Ill. 2d 419, 431 (1994); People v. Peco, 345 Ill. App. 3d 724, 729 (2004). We address the likelihood of success of a motion to discharge before analyzing whether counsel was justified in declining to move for a speedy trial.

Section 103--5 of the Code of Criminal Procedure of 1963 provides that a defendant is entitled to a trial within 120 days from the date he was taken into custody unless his own acts occasioned delay. 725 ILCS 5/103--5(a) (West 2004). In this case, defendant was taken into custody on March 30, 2003. All of the offenses arose from a single incident, but the State filed charges against defendant on three different dates. On March 30, 2003, defendant was charged with committing aggravated battery with a firearm against Quiles (count I) (720 ILCS 5/12--4.2(a)(1) (West 2002)), armed robbery against Quiles (count II) (720 ILCS 5/18--2(a) (West 2002)), and aggravated battery against Zinda (count III) (720

ILCS 5/12--4(a) (West 2002)).  On April 15, 2003, defendant was charged with committing armed robbery against Zinda (count IV) (720 ILCS 5/18--2(a) (West 2002)).

On July 2, 2003, defendant agreed to a continuance that would delay trial on counts I through IV until August 26, 2003.  However, on July 24, 2003, which was 116 days after the original charges were filed, the State filed new and additional charges alleging that defendant committed home invasions against Zinda (counts V and VII) (720 ILCS 5/12--11(a)(3) (West 2002)) and Quiles (counts VI and VIII) (720 ILCS 5/12--11(a)(5) (West 2002)).  The trial court scheduled an arraignment on the home invasion charges on July 25, 2003, but defense counsel failed to appear.  The arraignment was rescheduled for August 7, 2003, at which time defense counsel agreed to delay trial on all of the counts until September 30, 2003.

The speedy-trial period on the original charges was set to expire on July 28, 2003, but defendant agreed to a continuance on those charges from July 2, 2003, until the trial date.  Defendant concedes that he is responsible for the trial delay on counts I through IV after July 2, 2003, and therefore, he was not denied his right to a speedy trial on those counts.  However, he argues that his speedy-trial rights were violated when he was not tried on the new and additional charges of home invasion within 120 days of his arrest on the original charges.

The rule for determining the number of speedy-trial days attributable to the State when new and additional charges are brought against a previously charged defendant was initially stated in People v. Williams, 94 Ill. App. 3d 241, 248-49 (1981):

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." Williams, 94 Ill. App. 3d at 248-49.

In People v. Williams, 204 Ill. 2d 191 (2003), our supreme court reiterated its approval of the rule but stated that it applies only to new and additional charges that are subject to compulsory joinder under section 3--3 of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/3--3 (West 2004)). The court concluded that the speedy-trial statute should not be interpreted to require joinder that is not already mandated by section 3--3 of the Criminal Code. Williams, 204 Ill. 2d at 203. The court restated the rule and emphasized its rationale:

"If the initial and subsequent charges filed against the defendant are subject to compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges.

The harm in a contrary result is obvious: a trial by ambush. The State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges.

˘10˘

As Justice Kuehn presciently observed, 'All choices about requests that would delay proceedings would be made under a false understanding as a result of this deception.' When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial. Today, we do not create a loophole for criminal defendants. Instead, we close a loophole which would allow the State to circumvent a statutorily implemented constitutional right." Williams, 204 Ill. 2d at 207, quoting People v. Williams, No. 5--99--0452 (unpublished order under Supreme Court Rule 23) (Kuehn, J., dissenting).

In this case, the speedy-trial period for the original charges will also apply to the home invasion charges only if the new charges were subject to compulsory joinder. The compulsory-joinder provision of the Criminal Code states as follows:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." 720 ILCS 5/3--3 (West 2004).

In this case, the State alleged that the aggravated battery, aggravated battery with a firearm, and home invasions occurred in a single location on the same date. There is no dispute that the prosecutor knew of the facts underlying the home invasion counts on the date defendant was arrested on the original charges and that the additional charges arose from the same facts as the original charges. The parties correctly agree that all of the charges are subject to compulsory joinder under section 3--3 of the Criminal Code (see 720 ILCS 5/3--3 (West 2004)) and that the home invasion counts constitute "new and additional charges."

The parties also correctly agree that the delay in filing the home invasion charges-- the 116-day period from defendant's arrest on March 30, 2003, to July 24, 2003--is attributable to the State. See Williams, 204 Ill. 2d at 207. However, the State argues that defendant's right to a speedy trial on the home invasion counts was not violated because defense counsel agreed to continue the matter from July 25, 2003, until September 30, 2003, the eventual trial date.

The State filed the home invasion charges on July 24, 2003, when only four days remained in the speedy-trial period for those charges. See Williams, 204 Ill. 2d at 207. The trial court scheduled an arraignment on the new charges on July 25, 2003, which was one day after their filing and still within the speedy-trial period. However, defense counsel failed to appear at the hearing after requesting and obtaining an agreed continuance necessitated by a purported "scheduling conflict." Counsel left it to the State's discretion to request a new hearing date, and the trial court rescheduled the arraignment for August 7, 2003. Ordinarily, a defendant is charged with the delay resulting from defense counsel's

absence from court (People v. Kliner, 185 Ill. 2d 81, 117 (1998)), and any delay resulting from a defendant's failure to proceed with an arraignment is chargeable to the defendant (People v. Paulsgrove, 178 Ill. App. 3d 1073, 1076 (1989)).

Citing this court's decision in People v. Lendabarker, 215 Ill. App. 3d 540 (1991), defendant maintains that because the August 26, 2003, trial date had already been set at the time the home invasion charges were filed, he cannot be responsible for the delay between July 24, 2003, and August 26, 2003, but only for the days between August 26, 2003, and the eventual trial date of September 30, 2003. In response, the State argues that defendant's right to a speedy trial on the home invasion counts was not violated because defense counsel agreed to continue the matter from July 25, 2003, until September 30, 2003. While it is true that defense counsel moved for or agreed to continuances first to August 7, 2003, and then to September 30, 2003, we agree with defendant that there was no delay of the trial attributable to him until after August 26, 2003.

Our supreme court has consistently held that a delay is occasioned by the defendant and charged to the defendant when the defendant's acts caused or contributed to a delay resulting in the postponement of trial. People v. Hall, 194 Ill. 2d 305, 326 (2000); People v. Kliner, 185 Ill. 2d 81, 114 (1998); People v. McDonald, 168 Ill. 2d 420, 438 (1995); People v. Turner, 128 Ill. 2d 540, 550 (1989); People v. Reimolds, 92 Ill. 2d 101, 106 (1982). Thus, unless the trial date is postponed, there is no delay to attribute to defendant.

The foregoing principle was applied in Lendabarker, where the defendant was convicted of two felony counts of driving while under the influence of alcohol (DUI). Lendabarker, 215 Ill. App. 3d at 544. On appeal, the defendant argued, inter alia, that his

statutory speedy-trial rights were violated because the trial court incorrectly attributed several periods of pretrial delay to the defendant.  Lendabarker, 215 Ill. App. 3d at 552. The State requested and obtained a continuance that resulted in a scheduled trial date of April 10, 1989.  Defense counsel was required to appear in another case on April 10, and therefore, appeared on April 6 to request a continuance.  Lendabarker, 215 Ill. App. 3d at 554.  The appellate court held that, even though defense counsel requested a continuance on April 6, the defendant was not responsible for the four-day period from April 6 to April 10.  The four-day period was attributable to the State because the State was the party to originally request it, and the "actual delay chargeable to [the] defendant did not begin until April 10, when his attorney was engaged in another trial."   (Emphasis in original.) Lendabarker, 215 Ill. App. 3d at 554.

Defendant argues that Lendabarker is analogous to this case and compels a similar result.  Defendant asserts that his counsel's request to delay the arraignment from July 25, 2003, to August 7, 2003, did not result in an actual delay of the August 26, 2003, trial date, and therefore, the speedy-trial period expired four days after the new charges were filed. We agree.  In Lendabarker and in this case with respect to the home invasion charges, the State was responsible for the disputed delay immediately preceding the scheduled trial date.  In Lendabarker, the State was responsible for the delay because it requested it. Here, the State was responsible for the delay pursuant to Williams, which states that delays attributable to a defendant on the initial charges are not attributable to the defendant on the new and additional charges.  See Williams, 204 Ill. 2d at 207.

We hold that the State was responsible for the 116-day delay in filing the home invasion charges on July 24, 2003. We further hold that, under Williams and Lendabarker, defendant was not responsible for any subsequent delay that (1) defense counsel agreed to before the filing of the new charges and (2) did not actually delay the scheduled trial date of August 26, 2003. Therefore, the speedy-trial period was not tolled when defense counsel requested and obtained a continuance for the July 25, 2003, arraignment. The speedy-trial period expired three days later, at which time defendant was entitled to a speedy-trial discharge, which his attorney never requested. Defense counsel compounded this ineffectiveness at the August 7, 2003, hearing when he agreed to delay the entire case for nearly two more months, as defendant was entitled to a speedy-trial discharge on the home invasion charges at that time and, in fact, at any time after July 28, 2003.

We further conclude that defense counsel's failure to invoke defendant's speedy-trial rights cannot be justified as a matter of trial strategy. In fact, we can conceive of no justification for allowing defendant to stand trial on multiple Class X felony home invasion charges (720 ILCS 5/12--11(a)(5) (West 2002)), the most serious of which carried the possible penalty of imprisonment for not less than 6 years and not more than 30 years and for which 25 years or up to a term of natural life shall be added to the term of imprisonment imposed by the court (720 ILCS 5/12--11(c) (West 2002)), where such charges were dischargable on speedy-trial grounds.

The record discloses no explanation for defense counsel's failure to invoke defendant's speedy-trial rights here, and the error forced defendant to submit to a trial on much more serious charges for which he was ultimately sentenced to long prison terms.

Therefore, we conclude that defense counsel rendered ineffective assistance and that defendant's remedy is a speedy-trial discharge of the four home invasion counts. See Williams, 204 Ill. 2d at 208 (violation of speedy-trial statute requires reversal of conviction).

### B. Jury Instructions and Sufficiency of the Evidence

Upon reversing defendant's convictions of home invasion, we next consider whether he may yet be convicted of aggravated battery and aggravated battery with a firearm, two counts on which the jury returned guilty verdicts. Defendant argues that the evidence does not support a conviction. He alternatively argues that he is entitled to a new trial because the trial court incorrectly instructed the jury regarding identification testimony and the trial on the home invasion counts unfairly tainted the proceedings. We reject each argument and conclude that the proper remedy is a new sentencing hearing on the remaining counts.

Defendant concedes that his counsel failed to raise the jury instruction issue. Generally, a defendant forfeits review of any putative jury instruction error if he does not object to the instruction or offer an alternative instruction at trial and does not raise the instruction issue in a posttrial motion. People v. Herron, 215 Ill. 2d 167, 175 (2005). The so-called waiver principle encourages the defendant to raise issues before the trial court, thereby allowing the court to correct its own errors before the instructions are given, and consequently precluding the defendant from obtaining a reversal through inaction. Herron, 215 Ill. 2d at 175.

Supreme Court Rule 451(c), however, provides that " 'substantial defects' " in criminal jury instructions " 'are not waived by failure to make timely objections thereto if the interests of justice require.' " Herron, 215 Ill. 2d at 175, quoting 177 Ill. 2d R. 451(c). Rule

451(c) crafts a limited exception to the general rule to correct " 'grave errors' " and errors in cases " 'so factually close that fundamental fairness requires that the jury be properly instructed.' " Herron, 215 Ill. 2d at 175, quoting People v. Hopp, 209 Ill. 2d 1, 7 (2004). Rule 451(c) is coextensive with the plain-error clause of Supreme Court Rule 615(a), and we construe the two rules identically. Herron, 215 Ill. 2d at 175. Rule 615(a) provides: " 'Any error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the trial court.' " Herron, 215 Ill. 2d at 175-76, quoting 134 Ill. 2d R. 615(a).

Following an exhaustive discussion of Illinois and federal plain-error principles, our supreme court recently reiterated the law in this state as follows:

"[T]he plain-error doctrine bypasses normal forfeiture principles and allows a reviewing court to consider unpreserved error when either (1) the evidence is close, regardless of the seriousness of the error, or (2) the error is serious, regardless of the closeness of the evidence. In the first instance, the defendant must prove 'prejudicial error.' That is, the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him. The State, of course, can respond by arguing that the evidence was not closely balanced, but rather strongly weighted against the defendant. In the second instance, the defendant must prove there was plain error and that the error was so serious that it affected the fairness of the defendant's trial and challenged the integrity of the judicial process. [Citation.]

Prejudice to the defendant is presumed because of the importance of the right involved, '<u>regardless</u> of the strength of the evidence.' (Emphasis in original.) [Citation.] In both instances, the burden of persuasion remains with the defendant. [Citation.]" <u>Herron</u>, 215 Ill. 2d at 186-87.

Mindful of these principles, we address defendant's assertion that the trial court's identification instruction amounted to plain error that requires a new trial on the remaining charges of aggravated battery and aggravated battery with a firearm.

First, we determine the degree to which the trial court committed error in instructing the jury. The function of jury instructions is to convey to the jury the law that applies to the evidence presented. <u>People v. Fuller</u>, 205 Ill. 2d 308, 343 (2002). Jury instructions should not be misleading or confusing (<u>People v. Bush</u>, 157 Ill. 2d 248, 254 (1993)), but their correctness depends not on whether defense counsel can imagine a problematic meaning, but on whether ordinary persons acting as jurors would fail to understand them (<u>People v. Lozada</u>, 211 Ill. App. 3d 817, 822 (1991)).

The trial court instructed the jury as follows:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including, but not limited to, the following:

The opportunity the witness had to view the offender at the time of the offense."

Defendant argues that the instruction is deficient because it omits the remaining factors contained in Illinois Pattern Jury Instructions, Criminal, No. 3.15 (4th ed. 2000)

(hereinafter IPI Criminal 4th).  IPI Criminal 4th No. 3.15, "Circumstances of Identification,"

provides as follows:

"When you weigh the identification testimony of a witness, you should

consider all the facts and circumstances in evidence, including, but not limited to, the

following:

[1] The opportunity the witness had to view the offender at the time of the

offense.

[2] The witness's degree of attention at the time of the offense.

[3] The witness's earlier description of the offender.

[4] The level of certainty shown by the witness when confronting the

defendant.

[5] The length of time between the offense and the identification

confrontation."

The committee note explains that this instruction simply lists factors, well established

by case law, which offer guidance "in an area that contains complexities and pitfalls not

readily apparent to some jurors."  IPI Criminal 4th No. 3.15, Committee Note, at 107.  The

committee note directs judges to "[g]ive numbered paragraphs that are supported by the

evidence" and advises, "[t]he bracketed numbers are present solely for the guidance of

court and counsel and should not be included in the instruction submitted to the jury."  IPI

Criminal 4th No. 3.15, Committee Note, at 107.  " 'The jury should be instructed on only the

factors with any support in the evidence.  Other factors should be omitted.' "  Herron, 215

Ill. 2d at 191, quoting IPI Criminal 4th No. 3.15, Committee Note, at 2 (Supp. 2003).

In this case, the trial court chose not to instruct the jury to consider the witness's degree of attention at the time of the offense, the witness's earlier description of the offender, the level of certainty shown by the witness when confronting the defendant, and the length of time between the offense and the identification confrontation. Quiles and Zinda offered testimony that implicated each of these factors. Although the better course might have been to instruct the jury on all five factors of IPI Criminal 4th No. 3.15, we conclude that the trial court's error was not serious. In fact, the State's case likely would have been <u>strengthened</u> by drawing the jury's attention to the omitted factors. The victims were unquestionably focused on their attacker during the prolonged encounter, and thus had a good opportunity to observe him. Although the victims' earlier descriptions of the offender were vague when compared to their unequivocal identification of defendant at trial, their descriptions were never inconsistent. Finally, only nine months elapsed between the offenses and the trial, making it more likely that the witnesses' recollections were accurate.

The second step of the plain-error analysis requires us to determine the closeness of the evidence. Because we have concluded that any error in the challenged jury instruction was minimal, defendant may obtain relief under the plain-error doctrine only if the evidence was closely balanced. See <u>Herron</u>, 215 Ill. 2d at 187 (when the error is slight, "the defendant must show both that there was plain error and that the evidence was so closely balanced that the error alone severely threatened to tip the scales of justice against him"). We conclude that the State introduced overwhelming evidence to prove defendant guilty beyond a reasonable doubt of aggravated battery and aggravated battery with a firearm.

"When a court reviews the sufficiency of the evidence, it must ask 'whether, after viewing the evidence in the light most favorable to the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.' " (Emphasis in original.) <u>People v. Phillips</u>, 215 Ill. 2d 554, 569-70 (2005), quoting <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789 (1979). Defendant was charged with committing aggravated battery in that he, "without legal justification, intentionally caused bodily harm to Martha Zinda, in that he repeatedly struck Martha Zinda in the head with a handgun." Defendant was also charged with aggravated battery with a firearm in that he, "in committing a battery [(720 ILCS 5/12--3 (West 2002))], knowingly and by means of the discharging of a firearm caused an injury to Ernesto Quiles in that said defendant shot Ernesto Quiles two times in the buttox [sic] with a .380 caliber handgun." Defendant does not dispute that Quiles and Zinda were victims of these offenses, but he maintains that some other person committed the crimes and that the victims' alleged drug use and dealing renders them incredible on the issue of identification. We disagree.

"Findings based on the credibility of the witnesses and the weight given their testimony are determinations exclusively within the province of the finder of fact." <u>People v. Downin</u>, 357 Ill. App. 3d 193, 202 (2005), citing <u>People v. Collins</u>, 106 Ill. 2d 237, 261-62 (1985). "When evidence is merely conflicting, a reviewing court will not substitute its judgment for the judgment of the trier of fact." <u>Downin</u>, 357 Ill. App. 3d at 202. A single witness identification of the accused as the person committing the crime may be sufficient proof when the witness viewed him under circumstances permitting a positive identification.

People v. Lewis, 165 Ill. 2d 305, 356 (1995). However, a conviction cannot stand when a witness's identification of the accused as the criminal perpetrator is vague and doubtful. People v. Ash, 102 Ill. 2d 485, 494 (1984).

In this case, both Quiles and Zinda had the opportunity to view the assailant, whom they immediately recognized as defendant, the person who had been in their home only three days earlier. Moreover, the perpetrator displayed a familiarity with the home that would be expected of a person whom Quiles had known for a year. Upon entering the home, the offender asked Zinda about the whereabouts of her boyfriend, and he later directed his partner to a lamp that was out of view in another room. The victims explained their fearful reluctance to identify defendant as the perpetrator, and the jury credited their testimony despite the evidence of their involvement with drugs. After viewing this evidence in the light most favorable to the prosecution, we conclude that any rational trier of fact could have found defendant guilty beyond a reasonable doubt. Because the evidence of defendant's guilt was not close and any error in the jury instruction was minimal, he is not entitled to relief under the plain-error doctrine.

Finally, we address defendant's argument that the remedy for his attorney's failure to invoke his speedy-trial rights is a new trial on the remaining charges of aggravated battery and aggravated battery with a firearm. The Appellate Court, Third District, addressed the same issue in People v. Stanley, 266 Ill. App. 3d 307 (1994). In Stanley, the defendant was initially charged with one count of aggravated criminal sexual assault (Ill. Rev. Stat. 1985, ch. 38, par. 12--14(b)(1) (now 720 ILCS 5/12--14(b) (West 2004))), which is a Class X felony punishable by 6 to 30 years' imprisonment (730 ILCS 5/5--8--1(a)(3) (West 2004)).

The charge was based on an incident in which the defendant's wife restrained the victim, who was under 13 years old, while the defendant placed his penis in contact with the victim's vagina.  Stanley, 266 Ill. App. 3d at 310.

Late in the speedy-trial period, the State added two new counts of aggravated criminal sexual assault and two counts of aggravated criminal sexual abuse (Ill. Rev. Stat. 1985, ch. 38, par. 12--16(b)(1) (now 720 ILCS 5/12--16(b)(1) (West 2004))).  The new counts were based on conduct occurring on the same date as the incident supporting the original charge, but they alleged the additional bad acts of the defendant placing his mouth on the victim's vagina and placing his penis on the victim's mouth.  Stanley, 266 Ill. App. 3d at 310.  Counsel failed to invoke the defendant's speedy-trial rights, which entitled him to a dismissal of the four new and additional counts.  Stanley, 266 Ill. App. 3d at 311.  Instead, a jury found the defendant guilty of all five counts, and the trial court imposed a 25-year prison term on one count of aggravated criminal sexual assault.

Upon finding trial counsel to be ineffective for failing to invoke the speedy-trial statute, the appellate court rejected the State's suggestion to remand the cause solely for resentencing on the original count.  Stanley, 266 Ill. App. 3d at 311.  The court found "it reasonably probable that the outcome of a jury trial on multiple counts would be different from a trial on a single count, particularly given the nature of the acts alleged." (Emphasis added.)  Stanley, 266 Ill. App. 3d at 311.  Thus, a new sentencing hearing was not an adequate form of relief because the trial on the original count was "unfairly tainted by counsel's deficient performance in failing to obtain a discharge of multiple new and additional charges brought late in the speedy-trial period." Stanley, 266 Ill. App. 3d at 312.

In this appeal, the State has failed to advocate an appropriate remedy for defense counsel's ineffectiveness, instead relying on its argument that counsel was not ineffective. Therefore, the State has waived the remedy issue. See 188 Ill. 2d R. 341(e)(7) (points not argued are waived); People v. Phillips, 215 Ill. 2d 554, 565 (2005). However, "the rule of waiver is an admonition to the parties and not a limitation on the jurisdiction of this court." People v. Normand, 215 Ill. 2d 539, 544 (2005). Despite the State's waiver, we reject defendant's argument that his meritorious claim of ineffective assistance of counsel entitles him to a new trial on the remaining counts. We find Stanley distinguishable from this case. The jury in Stanley would not have heard graphic evidence of multiple sex acts against the young victim if the new and additional charges had been properly dismissed. However, in this case, the proof of the counts of aggravated battery and aggravated battery with a firearm would have been substantially the same if the home invasion counts had been dismissed. As discussed, defendant did not question the nature of the offenses but instead disputed the identity of the offender. We believe that the new and additional counts of home invasion likely did not affect the outcome of the jury trial on the original counts. Therefore, we conclude that the appropriate remedy is a remand to the trial court for a new sentencing hearing on the counts of aggravated battery and aggravated battery with a firearm.

For the preceding reasons, defendant's convictions of and sentences for the two home invasion counts are reversed on speedy-trial grounds. The remainder of the judgment is affirmed, and the cause is remanded for the trial court to sentence defendant on the jury's guilty verdicts on aggravated battery and aggravated battery with a firearm.

Affirmed in part and reversed in part; cause remanded with directions.

BOWMAN and KAPALA, JJ., concur.