No. 2--06--0423          Filed: 5-29-08

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) | Appeal from the Circuit Court of Winnebago County. |
| | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| v. | ) | No. 04--CF--1092 |
| | ) | |
| CRAVEN F. PHIPPS, | ) | Honorable |
| | ) | Ronald J. White, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE GILLERAN JOHNSON delivered the opinion of the court:

The defendant, Craven F. Phipps, pleaded guilty to aggravated driving under the influence (aggravated DUI) (625 ILCS 5/11--501(d)(1)(F) (West 2004)) and was sentenced to 12 years' imprisonment. Following the denial of his motion to withdraw his guilty plea, the defendant filed a timely notice of appeal. On appeal, the defendant argues that he was deprived of the effective assistance of counsel at the plea proceedings. We reverse and remand for additional proceedings.

On April 5, 2004, the defendant drove a car that collided with a car driven by MaLocka Gille. Gille died as a result of the collision. Immediately following the collision, the defendant was ticketed for violating a local traffic ordinance and for one count of driving under the influence (625 ILCS 5/11--501(a)(2) (West 2004)). On April 28, 2004, the defendant was charged by indictment with one count of reckless homicide (720 ILCS 5/9--3(a) (West 2004)). The indictment indicated that the charge was a Class 2 felony, subject to special sentencing.

We note that, prior to 2003, section 9--3 of the Criminal Code of 1961 (Criminal Code) generally classified reckless homicide as a Class 3 felony, punishable by two to five years in prison (720 ILCS 5/9--3(d)(2) (West 2002); 730 ILCS 5/5--8--1(a)(6) (West 2002)). In addition to that general classification, section 9--3(e) provided in pertinent part as follows:

"[I]n cases involving reckless homicide in which the defendant was determined to have been under the influence of alcohol or any other drug or drugs as an element of the offense, or in cases in which the defendant is proven beyond a reasonable doubt to have been under the influence of alcohol or any other drug or drugs, the penalty shall be a Class 2 felony, for which a person, if sentenced to a term of imprisonment, shall be sentenced to a term of not less than 3 years and not more than 14 years." 720 ILCS 5/9--3(e) (West 2002).

Effective July 18, 2003 (approximately nine months prior to the defendant committing the instant offense), the legislature amended section 9--3 of the Criminal Code (Pub. Act 93--213, §7, eff. July 18, 2003) in response to our supreme court's decision in People v. Pomykala, 203 Ill. 2d 198 (2003). In Pomykala, our supreme court held that section 9--3(b) created an improper mandatory presumption because, once a jury concluded that a defendant was intoxicated, the jury was to presume that the defendant was reckless unless the defendant proved otherwise. Pomykala, 203 Ill. 2d at 207-08. Under the newly enacted version of section 9--3, reckless homicide remained a Class 3 felony punishable by two to five years in prison (720 ILCS 5/9--3(d)(2) (West 2004); 730 ILCS 5/5--8--1(a)(6) (West 2004)). However, Public Act 93--213 made significant changes to section 9--3, including removing subsection (e), under which reckless homicide involving DUI (alcohol or drugs) was classified as a Class 2 felony punishable by 3 to 14 years in prison.

In addition, Public Act 93--213 amended section 11--501(d) of the Illinois Vehicle Code (Vehicle Code) (625 ILCS 5/11--501(d) (West 2004)), which defines aggravated DUI, by adding language similar to section 9--3(e) of the Criminal Code to offset the removal of section 9--3(e). In particular, Public Act 93--213 added section 11--501(d)(1)(F) of the Vehicle Code, which provides in pertinent part as follows:

"Every person convicted of committing a violation of this [s]ection shall be guilty of aggravated driving under the influence of alcohol, other drug or drugs, or intoxicating compound or compounds, or any combination thereof if:

* * *

(F) the person, in committing a [DUI] violation ***, was involved in a motor vehicle, snowmobile, all-terrain vehicle, or watercraft accident that resulted in the death of another person, when the violation *** was a proximate cause of the death."

625 ILCS 5/11--501(d)(1)(F) (West 2004).

Public Act 93--213 also amended section 11--501(d)(2) to provide, in pertinent part, that aggravated DUI (alcohol or drugs) is a Class 2 felony with a penalty range of 3 to 14 years in prison if the violation resulted in the death of one person. 625 ILCS 5/11--501(d)(2) (West 2004).

Despite this change in the law, the State, defense counsel, and the trial court all acted as if the reckless homicide statute had not been amended. On August 20, 2004, defense counsel informed the trial court that the defendant would be entering a plea of guilty to reckless homicide in exchange for the State recommending a sentencing cap of 12 years' imprisonment. The trial court then asked the State if, based on the special sentencing provisions, the sentencing range was 3 to 14 years' imprisonment. The State indicated that it was. The trial court then admonished the defendant that,

based on the plea agreement, the defendant could receive a sentence of up to 12 years' imprisonment. The defendant indicated that he understood that he could receive a sentence of up to 12 years' imprisonment. The trial court subsequently accepted the defendant's plea, entered a judgment of conviction, and ordered the preparation of a presentence investigation report.

On November 19, 2004, prior to sentencing, the State filed a motion to vacate the defendant's guilty plea. The State asserted that the legislature had found the statute under which the defendant had pleaded guilty (720 ILCS 5/9--3(a) (West 2004)) to be void. The State further asserted that the appropriate charge against the defendant was aggravated DUI (625 ILCS 5/11--501(d)(1)(F) (West 2004)).

(We note that the State's rationale for its motion was incorrect. The legislature had not determined that the reckless homicide statute was void. See People v. Lush, 372 Ill. App. 3d 629, 636-37 (2007). Rather, the legislature had amended that statute so as to remove the mandatory presumption language and the special sentencing provisions. See Lush, 372 Ill. App. 3d at 636-37.)

On December 1, 2004, the trial court conducted a hearing on the State's motion. Defense counsel explained to the court:

"It's [the State's and the defendant's] intention at this time to vacate the previous plea entered on the reckless homicide, the same exact behavior encompassed in the aggravated driving under the influence of alcohol statute. We believe it eliminates any question regarding the validity of the statute if we vacate the plea on the reckless homicide, enter a plea instead to the charge of aggravated DUI."

After the State indicated that it agreed with defense counsel's statement, the trial court granted the State's motion to vacate the defendant's plea. The State then filed an information charging the defendant with aggravated DUI. The information alleged:

"That on or about the 5th day of April, 2004, in the County of Winnebago, State of Illinois, CRAVEN PHIPPS committed the offense of AGGRAVATED DRIVING UNDER THE INFLUENCE OF ALCOHOL in that he drove a motor vehicle within this state while under the influence of alcohol, in violation of 625 ILCS 5/11--501(a)(2), was involved in a motor vehicle accident upon a public highway, namely Auburn Street, in the city of Rockford, Illinois, with a motor vehicle being driven by Malocka Gille, said motor vehicle accident causing the death of Malocka Gille, and said violation was the proximate cause of the death of Malocka Gille in violation of 625 ILCS 5/11--501(d)(1)(F). (Class 2 Felony-- Special Sentencing Range of 3 to 14 years if [sic] imprisonment--Max. Fine $25,000)."

The defendant waived preliminary hearing and entered a plea of guilty to aggravated DUI, which the trial court accepted on the same day.

On December 16, 2004, following a hearing, the trial court sentenced the defendant to 12 years' imprisonment. On January 14, 2005, the defendant filed a motion to withdraw his guilty plea and a motion to reconsider his sentence. On March 29, 2006, following a hearing, the trial court denied the motions. The defendant thereafter filed a timely notice of appeal.

On appeal, the defendant argues that he was denied the effective assistance of counsel. Specifically, the defendant contends that his counsel should have objected to the State's motion to revise the plea agreement to vacate the plea to reckless homicide, a Class 3 felony, and substitute the charge with that of aggravated DUI, a Class 2 felony. Additionally, the defendant argues that, under

the compulsory joinder statute, the State is required to prosecute all charges in a single prosecution. As the State failed to bring an aggravated DUI charge against him within 120 days of his being placed in custody, thereby violating the speedy-trial statute (725 ILCS 5/103--5(a) (West 2004)), the defendant argues that his counsel was ineffective for not objecting to the State filing an aggravated DUI charge against him 241 days after he was taken into custody.

Prior to addressing the merits of the defendant's appeal, we first address the State's argument that, by pleading guilty, the defendant has waived his right to challenge on appeal the effectiveness of his trial counsel. In making this argument, the State relies on the law set forth in People v. Stone, 374 Ill. App. 3d 980, 984-85 (2007), which provides:

"It is well established that a voluntary guilty plea waives all nonjurisdictional errors or irregularities, including constitutional errors. People v. Townsell, 209 Ill. 2d 543, 545 (2004). '[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in McMann.' Tollett v. Henderson, 411 U.S. 258, 267, 36 L. Ed. 2d 235, 243, 93 S. Ct. 1602, 1608 (1973), citing McMann v. Richardson, 397 U.S. 759, 771, 25 L. Ed. 2d 763, 773, 90 S. Ct. 1441, 1449 (1970) (defendant must show that advice was not 'within the range of competence demanded of attorneys in criminal cases')." Stone, 374 Ill. App. 3d at 984-85.

Here, the defendant is arguing on appeal that his attorney's representation at the plea proceedings was not within the range of competence demanded of attorneys in criminal cases. Thus, the defendant did not waive his right to challenge the effectiveness of his counsel's representation. See People v. Palmer, 162 Ill. 2d 465, 476 (1994) (supreme court considered on direct appeal issue of defense counsel's effectiveness at plea proceedings).

The State further argues that the defendant has waived the right to challenge the effectiveness of his counsel's representation because he did not raise that issue in his motion to withdraw his guilty plea. The State correctly notes that the trial court allowed the defendant to speak with another attorney regarding whether he wanted to pursue an ineffective-assistance claim. The defendant informed the conflict attorney that he did not wish to pursue that claim. Thus, the defendant's original counsel continued to represent him at the hearing on his motion to withdraw his guilty plea.

Even though the trial court gave the defendant the opportunity to raise an ineffective-assistance claim at the proceedings below and the defendant chose not do so, we do not believe it would be appropriate to determine that the defendant is now procedurally barred from raising that issue on appeal. Waiver is a limitation on the parties, but does not limit the court's ability to consider the issue. People v. Peden, 377 Ill. App. 3d 463, 470 (2007). Because both the parties and the trial court demonstrated some confusion as to the effects of the legislature's amendment of the reckless homicide statute, the waiver rule should be relaxed.

Having determined that the issue has not been waived for our review, we note our perplexity that the State raised no argument in its appellate brief other than waiver. The cases cited above as to when the waiver doctrine applies are not novel. Moreover, although the State has the right to argue any procedural basis to affirm the trial court's judgment, we believe that to rely solely on that

basis, particularly when the defendant is asserting the substantial deprivation of a constitutional right, is inappropriate. The role of the State on appeal is more than just arguing that the lower court's decision should be affirmed. The State's role is to provide arguments sounded in law and, if necessary, to concede errors below, to help ensure that this court reaches a just resolution of the case before it. See United States v. Wade, 388 U.S. 218, 256 n.5,18. L. Ed. 2d 1149, 1174 n.5, 87 S. Ct. 1926, 1947 n.5 (1967) (White, J., concurring in part and dissenting in part, joined by Harlan and Stewart, JJ.), quoting Berger v. United States, 295 U.S. 78, 88, 79 L. Ed. 1314, 1321, 55 S. Ct. 629, 633 (1935) (setting forth that the State's obligation in a criminal prosecution " 'is not that it shall win a case but that justice shall be done' ").

Turning to the merits of the defendant's appeal, we first observe that a claim of ineffective assistance of counsel is judged according to the two-prong, performance-prejudice test established in Strickland v. Washington, 466 U.S. 668, 80 L. Ed. 2d 674, 104 S. Ct. 2052 (1984). People v. Lawton, 212 Ill. 2d 285, 302 (2004); People v. Albanese, 104 Ill. 2d 504, 526-27 (1984). To obtain relief under Strickland, a defendant must prove that defense counsel's performance fell below an objective standard of reasonableness and that this substandard performance caused prejudice by creating a reasonable probability that, but for counsel's errors, the trial result would have been different. People v. Boyd, 363 Ill. App. 3d 1027, 1034 (2006).

"An attorney's failure to seek discharge of his client on speedy-trial grounds generally will be deemed ineffective assistance of counsel if there is a reasonable probability that the defendant would have been discharged had a timely motion for discharge been made and no justification has been proffered for the attorney's failure to bring such a motion." People v. Staten, 159 Ill. 2d 419, 431 (1994); People v. Peco, 345 Ill. App. 3d 724, 729 (2004). "We address the likelihood of success

of a motion to discharge before analyzing whether counsel was justified in declining to move for a speedy trial." See Boyd, 363 Ill. App. 3d at 1034.

Section 103--5(a) of the Code of Criminal Procedure of 1963 provides that a defendant is entitled to a trial within 120 days from the date he was taken into custody unless his own acts occasioned delay. 725 ILCS 5/103--5(a) (West 2004). In this case, the defendant was taken into custody on April 5, 2004. All of the offenses arose from a single incident, but the State filed charges against the defendant on two different dates. On April 28, 2004, the defendant was charged with committing reckless homicide. On December 1, 2004, the defendant was charged with aggravated DUI.

The rule for determining the number of speedy-trial days attributable to the State when new and additional charges are brought against a previously charged defendant was initially stated in People v. Williams, 94 Ill. App. 3d 241, 248-49 (1981):

"Where new and additional charges arise from the same facts as did the original charges and the State had knowledge of these facts at the commencement of the prosecution, the time within which trial is to begin on the new and additional charges is subject to the same statutory limitation that is applied to the original charges. Continuances obtained in connection with the trial of the original charges cannot be attributed to defendants with respect to the new and additional charges because these new and additional charges were not before the court when those continuances were obtained." Williams, 94 Ill. App. 3d at 248-49.

In People v. Williams, 204 Ill. 2d 191 (2003), our supreme court reiterated its approval of the rule but stated that it applies only to new and additional charges that are subject to compulsory

joinder under section 3--3 of the Criminal Code (720 ILCS 5/3--3 (West 2004)). The court concluded that the speedy-trial statute should not be interpreted to require joinder that is not already mandated by section 3--3 of the Criminal Code. Williams, 204 Ill. 2d at 203. The court restated the rule and emphasized its rationale:

"If the initial and subsequent charges filed against the defendant are subject to compulsory joinder, delays attributable to the defendant on the initial charges are not attributable to the defendant on the subsequent charges.

The harm in a contrary result is obvious: a trial by ambush. The State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges. We cannot presume that a defendant would have agreed to a continuance if he had faced both charges. As Justice Kuehn presciently observed, 'All choices about requests that would delay proceedings would be made under a false understanding as a result of this deception.' When the State filed the more serious charges, the defendant would face a Hobson's choice between a trial without adequate preparation and further pretrial detention to prepare for trial. Today, we do not create a loophole for criminal defendants. Instead, we close a loophole which would allow the State to circumvent a statutorily implemented constitutional right." Williams, 204 Ill. 2d at 207, quoting People v. Williams, No. 5--99--0452, slip op. at __ (____) (unpublished order under Supreme Court Rule 23) (Kuehn, J., dissenting).

In this case, the speedy-trial period for the original charges will also apply to the aggravated DUI charge only if the new charge was subject to compulsory joinder. The compulsory-joinder provision of the Criminal Code states as follows:

"(a) When the same conduct of a defendant may establish the commission of more than one offense, the defendant may be prosecuted for each such offense.

(b) If the several offenses are known to the proper prosecuting officer at the time of commencing the prosecution and are within the jurisdiction of a single court, they must be prosecuted in a single prosecution, except as provided in Subsection (c), if they are based on the same act.

(c) When 2 or more offenses are charged as required by Subsection (b), the court in the interest of justice may order that one or more of such charges shall be tried separately." 720 ILCS 5/3--3 (West 2004).

Here, the reckless homicide charge set forth that on April 5, 2004, the defendant, while under the influence of alcohol, was involved in a motor vehicle accident that killed the victim. The aggravated DUI charge also set forth that on April 5, 2004, the defendant, while under the influence of alcohol, was involved in a motor vehicle accident that killed the victim. Thus, it is apparent that both charges arose from the same conduct in Winnebago County and thus were within the jurisdiction of a single court. Moreover, a review of the record reveals that the prosecutor should have been aware of both offenses when the defendant was originally indicted. Accordingly, both charges should have been brought in the same proceeding. See 720 ILCS 5/3--3 (West 2004); People v. Quigley, 183 Ill. 2d 1, 11 (1998). As the State did not bring the aggravated DUI charge until almost eight months after the defendant had been in custody, the aggravated DUI charge was not timely filed and therefore violated the defendant's right to a speedy trial. Defense counsel was therefore ineffective for not seeking to have that charge dismissed on speedy-trial grounds. See

Boyd, 363 Ill. App. 3d at 1039. We conclude that the defendant's remedy is a speedy-trial discharge of the aggravated DUI charge. See Boyd, 363 Ill. App. 3d at 1039.

In so ruling, we find unpersuasive the State's reliance on People v. Woodrum, 223 Ill. 2d 286 (2006). In that case, the State charged the defendant by indictment with seven counts of child abduction (720 ILCS 5/10--5(b)(10) (West 1998)). Woodrum, 223 Ill. 2d at 291. The first indictment alleged that on or about November 4, 1999, the defendant intentionally lured four children into his dwelling without the consent of their parents. Woodrum, 223 Ill. 2d at 291-92. The second indictment alleged that on or about November 5, 1999, the defendant intentionally lured three children into his dwelling without the consent of their parents. Woodrum, 223 Ill. 2d at 292. On June 22, 2000, the State filed amended indictments, essentially restating the previous allegations and adding that the defendant acted " 'for other than a lawful purpose.' " Woodrum, 223 Ill. 2d at 292. On July 28, 2000, the defendant moved to dismiss the indictments, claiming that his right to a speedy trial had been violated. Woodrum, 223 Ill. 2d at 293. At the hearing on the motion, the defendant argued that any delays in connection with the original charges could not be attributed to him on the subsequent indictments, because those indictments contained new and additional charges. Woodrum, 223 Ill. 2d at 293. The trial court denied the defendant's motion to dismiss, finding that the subsequent indictments were " 'just the re-indictment of the original charges.' " Woodrum, 223 Ill. 2d at 293.

On appeal, the appellate court reversed, determining that the defendant's statutory right to a speedy trial had been violated. Woodrum, 223 Ill. 2d at 296. The supreme court reversed the appellate court. Woodrum, 223 Ill. 2d at 301. The supreme court explained that the charges against the defendant in the second indictment would be subject to dismissal on speedy-trial grounds if the

charges were "new and additional." Woodrum, 223 Ill. 2d at 299-301. The supreme court determined that the charges in the second indictment were not new and additional but rather were "virtually identical" to the charges in the first indictment. Woodrum, 223 Ill. 2d at 300-01.

Here, unlike in Woodrum, the second indictment against the defendant was based on a different statute. As explained above, at the time the defendant was indicted for reckless homicide, he could be sentenced to a maximum of five years' imprisonment for that specific offense. See 720 ILCS 5/9--3(d)(2) (West 2004); 730 ILCS 5/5--8--1(a)(6) (West 2004). (Under the reckless homicide statute, if certain factors were present, such as the offense occurring in a construction zone, the offender could be sentenced to a term beyond five years' imprisonment. See 720 ILCS 5/9--3(e--7), (e--8), (e--9), (f) (West 2004). None of those factors are applicable in the instant case.) Under the subsequent information for aggravated DUI, the defendant could be sentenced to a maximum of 14 years' imprisonment. See 625 ILCS 5/11--501(d)(1)(F) (West 2004). Based on the different penalties for the different statutory charges, the indictments were not "virtually identical." Rather, the charges in the second indictment were "new and additional." Accordingly, Woodrum does not require a different result in this case.

The dissent's conclusion that Woodrum is indistinguishable from the case at bar does not comport with the material facts of this case. Here, after the defendant was involved in the fatal automobile accident on April 5, 2004, the State had the option, based on the specific conduct at issue, of charging the defendant with reckless homicide (having a maximum sentence of five years' imprisonment), aggravated DUI (having a maximum sentence of 14 years' imprisonment), or both. The State chose to charge the defendant with a single offense of reckless homicide. In light of the specific allegations in the indictment, the fact that the indictment included a notation that the reckless

homicide charge was a Class 2 felony, subject to special sentencing, does not mean that the State could seek a sentence beyond the statutory maximum of five years. See People v. Reyes, 338 Ill. App. 3d 619, 620 (2003) (sentence beyond the statutory maximum is void). If the State wanted to pursue the new and additional charge of aggravated DUI against the defendant, the State was obligated to bring that charge within 120 days after the defendant was taken into custody for reckless homicide. See Quigley, 183 Ill. 2d at 11. As the State did not bring the new charge in a timely fashion, the defendant's conviction of aggravated DUI cannot stand.

In arguing that defense counsel provided the defendant with effective representation, the dissent additionally relies upon Williams, 204 Ill. 2d at 207, and People v. Witt, 227 Ill. App. 3d 936, 944 (1992). The dissent's reliance on those cases is misplaced as neither case involved a defendant who was advised by his defense counsel to accept a plea agreement in which the possible sentence exceeded the statutory maximum.

Having determined that the aggravated DUI conviction must be reversed, we next address whether there is any basis to allow the State to bring again a charge of reckless homicide against the defendant. We note that, in his original brief, the defendant's prayer for relief was that his conviction of aggravated DUI be reversed and that the cause be remanded to allow him to plead anew to the original reckless homicide charge. We ordered the parties to file supplemental briefs to address whether the State may charge the defendant again with the original reckless homicide charge. Upon reviewing all of the supplemental briefs, we agree with the defendant that it is within the State's discretion whether to bring charges against the defendant again for reckless homicide. See People v. Flanagan, 201 Ill. App. 3d 1071, 1076 (1990). The issue of whether these charges would

-14-

withstand a motion to dismiss is not yet ripe for our review. See People v. Cottrell, 141 Ill. App. 3d 364, 368 (1986) (court will not consider issue that is not ripe for review).

For the foregoing reasons, we reverse the defendant's conviction of aggravated DUI and we remand for additional proceedings consistent with this opinion.

Reversed and remanded with directions.

BYRNE, P.J., concurs.

JUSTICE O'MALLEY, dissenting:

I disagree with the majority's conclusion that defendant's counsel was ineffective for failing to object on speedy-trial grounds to the State's presenting a new charging instrument. In my view, the new charging instrument corrected a formal defect in the previous charging instrument and did not add any new charges against defendant. Since an amended charging instrument that does not allege a new crime does not trigger the speedy-trial concerns that defendant now argues, counsel's failure to raise a speedy-trial objection was neither unreasonable assistance nor prejudicial to defendant.

In 2002, reckless homicide occurred, inter alia, where a person, without lawful justification, unintentionally killed another person and the cause of death consisted of the driving of a motor vehicle. 720 ILCS 5/9--3(a) (West 2002). The offense became a Class 2 felony, punishable by 3 to 14 years' imprisonment, "in cases in which the defendant is proven beyond a reasonable doubt to have been under the influence of alcohol." 720 ILCS 5/9--3(e) (West 2002). In 2004, driving under the influence of alcohol occurred where a person drove a vehicle while under the influence of alcohol (625 ILCS 5/11--501(a) (West 2004)), and the offense became the Class 2 felony of aggravated driving under the influence, punishable by 3 to 14 years' imprisonment, where the person driving the

vehicle was involved in an accident that caused the death of another person (625 ILCS 5/11--501(d)(1)(F), (d)(2) (West 2004)). Thus, the Class 2 felony versions of both crimes describe precisely the same conduct and have precisely the same elements. See People v. Gancarz, No. 104029, slip op. at 8 (April 3, 2008) (Public Act 93--213 "recharacterized the conduct that had been reckless homicide while under the influence of drugs or alcohol as aggravated driving while under the influence, and retained the sentencing structure of 3 to 14 years' imprisonment"); slip op. at 3 (2003 amendment to aggravated driving under the influence "add[ed] language similar to section 9--3(e) of the Criminal Code to offset the removal of section 9--3(e)").

The State charged defendant with the Class 2 felony version of reckless homicide. Then, upon learning that the crime had been relabeled aggravated driving under the influence, it filed a new charging instrument alleging a Class 2 felony, based on the exact same conduct, under the new label. There were no material differences between the two charging instruments. The second instrument was, in operation if not in title, an amended charging instrument. I see no problem with this type of formal amendment. Cf. People v. Witt, 227 Ill. App. 3d 936, 944 (1992) (no reversible error where the State cited the improper statute in its murder indictments, because the indictments provided the defendant fair warning of the charges against him).

Nor does our supreme court. In Woodrum, the defendant argued, just as defendant here argues, that a subsequent indictment, which restated but amended the original charges, violated his right to a speedy trial because the intervening delays caused by the defendant did not toll the speedy-trial period as to the subsequent indictment. Woodrum, 223 Ill. 2d at 297-98. The new charging instrument alleged the same factual basis and alleged the same charges, but added the phrase " 'for other than a lawful purpose.' " Woodrum, 223 Ill. 2d at 300-01. The supreme court held that,

because the "defendant could not have been surprised by the subsequent charges because they were essentially the same as the original ones," the new charging instrument did not allege "new and additional" charges for purposes of the defendant's speedy-trial challenge. Woodrum, 223 Ill. 2d at 301. Thus, the supreme court held that the previous continuances tolled the speedy-trial period, even though they predated the new charging instrument.

The majority distinguishes Woodrum on the basis that the charges here carried different penalties and thus cannot be considered identical. According to the majority, "at the time the defendant was indicted for reckless homicide, he could be sentenced to a maximum of five years' imprisonment" for a Class 3 felony conviction, while, "[u]nder the subsequent information for aggravated DUI, the defendant could be sentenced to a maximum of 14 years' imprisonment." Slip op. at 13. I disagree that the original indictment charged only a Class 3 felony. The original charging instrument included an explicit notation, in bold typeface no less, that the reckless homicide charge was "**Class 2--Special Sentencing**" (emphasis in original). Contrary to what the majority says, the penalties indicated by the two charging instruments were identical.

The majority disagrees with my analysis because, according to the majority, the State charged defendant with reckless homicide, which, at the time of the offense and under the facts presented here, carried a 5-year maximum penalty instead of a 14-year maximum penalty. Slip op. at 13-14. The majority takes the wrong approach. While it is true that the conduct labeled "reckless homicide" in 2004 carried a 5-year maximum penalty under the circumstances presented here, the conduct with which defendant was charged matched aggravated driving under the influence (and 2002 reckless homicide), not 2004 reckless homicide.[1] Thus, the conduct for which defendant was charged carried

---

[1]The majority's position here is doubly confusing because it relies strictly on the label

-17-

a 14-year maximum penalty, not a 5-year maximum penalty, at the time of defendant's offense. I further note that, at all relevant times, the parties shared my understanding of the charging instruments and prepared their cases accordingly. The second charging instrument changed the label under which defendant was charged, and no more.

The majority decides this case according to the "rule for determining the number of speedy-trial days attributable to the State <u>when new and additional charges are brought against a previously charged defendant</u>." (Emphasis added.) Slip op. at 9. This rule has no application here, where the State did not present any new and additional charges. Likewise, the compulsory-joinder statute, upon which the majority relies, applies only where the same conduct of a defendant " 'may establish the commission of <u>more than one offense</u>.' " (Emphasis added.) Slip op. at 11, quoting 720 ILCS 5/3--3 (West 2004). Here, there was but one offense, and, again, the rule does not apply.

Indeed, the rationale behind the rule that, for speedy-trial purposes, previously occasioned continuances caused by the defense count against the State with regard to belatedly filed additional charges is that a contrary rule could allow "trial by ambush." <u>Williams</u>, 204 Ill. 2d at 207. Under a different rule, "[t]he State could lull the defendant into acquiescing to pretrial delays on pending charges, while it prepared for a trial on more serious, not-yet-pending charges." <u>Williams</u>, 204 Ill.

_____

"reckless homicide" (and not the facts contained in the charge) to hold that the amended charging instrument did not charge the same crime, but it then relies strictly on the actual conduct alleged (and not the label) to hold that 2004 reckless homicide could carry only a five-year sentence under the facts of this case. See slip op. at 13 ("Under the reckless homicide statute, if certain factors were present, ***" a sentence beyond five years was possible, but "[n]one of those factors are applicable in the instant case"). I rely consistently on the conduct charged against defendant.

2d at 207. Under those circumstances, a court "cannot presume that a defendant would have agreed to a continuance if he had faced both charges." Williams, 204 Ill. 2d at 207. The rationale, like the rule it supports, does not extend to the present case. The original charging instrument here put defendant on notice of the same allegations as did the revised charging instrument. Thus, there was no danger of trial by ambush, and any continuances defendant obtained were sought with full knowledge of the charge against him.

The blame for the misguided holding in this case does not lie solely with the majority. In his opening brief, defendant framed this appeal as involving a speedy-trial issue, and, instead of responding on the merits, the State in its brief relied exclusively on the waiver argument that the majority correctly rejects. The State's decision to ignore defendant's argument on the merits was not just needlessly risky; given the majority's view, it was fatal. Because the State argued only the waiver issue in its initial brief,[2] both the remedy fashioned by the majority and the result I propose were reached without timely input from the State. This case, then, becomes a classic example of when an advocate should make an effort to present an alternative argument. Thus, I agree with the majority's criticism of the State's advocacy here.

---

[2]After receiving the parties' initial briefs, in which the State did not address the merits of defendant's position, we ordered supplemental briefing on the issue of whether the State would be able to reinstate the reckless homicide charge if we were to vacate defendant's conviction of aggravated driving under the influence. The State cited Woodrum in its supplemental brief, which largely ignored the question we had posed to the parties and instead served as a belated argument on the merits.

I would decide this case according to <u>Woodrum</u> and hold that, since the new charging instrument alleged the same conduct, and carried the same potential penalty, as the original, it was not the type of "new and additional" charge required to support defendant's speedy-trial argument.